2003 WY 103

**Eduardo VLAHOS, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. 02–154.**

Supreme Court of Wyoming.

Aug. 27, 2003.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Ryan R. Roden, Senior Assistant Appellate Counsel.

Representing Appellee: Patrick J. Crank, Attorney General; Paul S. Rehurek, Deputy Attorney General; and D. Michael Pauling, Senior Assistant Attorney General.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

KITE, Justice.

[¶ 1]   Eduardo Vlahos appeals from his conviction for conspiracy to commit aggravated robbery under Wyo. Stat. Ann. §§ 6–1–303(a) and 6–2–401(a) and (c)(ii) (LexisNexis 2003), claiming violation of his right to a speedy trial, insufficiency of the evidence, ineffective assistance of counsel, and improper jury instructions on the law of accomplice/coconspirator testimony.   We find no error and affirm.

## ISSUES

[¶ 2]   Mr. Vlahos presents the following issues:

*ISSUE I*

Whether Appellant was denied his right to a speedy trial when the trial court failed to bring him to trial within 120 days from

his arraignment and fail[ed] to obtain the Wyoming Supreme Court's permission to extend his trial date beyond 180 days from arraignment before the 180 days elapsed?

*ISSUE II*

Was the evidence insufficient to convict Appellant of conspiracy to commit aggravated robbery, as sufficient independent evidence did not exist to corroborate accomplice/co-conspirator testimony?

*ISSUE III*

Whether the trial court erred by failing to instruct the jury on the applicable law in Wyoming regarding accomplice/co-conspirator testimony, and by failing to give the jury a cautionary instruction regarding accomplice/co-conspirator testimony?

*ISSUE IV*

Did plain error occur[ ] when the trial court failed to instruct the jury on the law regarding accomplice/co-conspirator testimony and the requirement that independent evidence corroborate such testimony, and [failed] to either find as a matter of law that certain witnesses were accomplices/co-conspirators or [submit] that question to the jury?

*ISSUE V*

Did Appellant receive ineffective assistance of counsel when trial counsel failed to request the trial court to give the jury instructions regarding testimony of accomplices and co-conspirators?

The State of Wyoming phrases the issues as:

I. Was Appellant denied his rights to a speedy trial?

II. Was the evidence sufficient to support Appellant's conviction of conspiracy to commit aggravated robbery?

III. Did error, plain or otherwise, occur due to any failure to instruct the jury regarding the testimony of accomplices or co-conspirators, or can defense counsel be deemed ineffective for failing to seek such instructions?

### FACTS

[¶ 3] On May 3, 2001, two men robbed Security First Bank in Cheyenne. Mr. Vlahos and his sixteen-year-old half-brother, Marco Buckley, were arrested in connection with the robbery and charged with aggravated robbery and conspiracy to commit aggravated robbery.

[¶ 4] The case went to trial on December 17, 2001. Among the state's witnesses were Mr. Buckley, Matthew Munoz, Justin Hoskins, Jessie Ray Walters, and Kimberly Ross, each of whom testified concerning his or her participation in or knowledge of plans by Mr. Vlahos and Mr. Buckley to rob a bank.

[¶ 5] Mr. Buckley testified that, beginning in April 2001, he had numerous conversations with Mr. Vlahos about robbing a bank in Colorado or Cheyenne. Together, he and Mr. Vlahos discussed the robbery with others, including Mr. Munoz, Mr. Hoskins, and Mr. Walters. He and Mr. Vlahos planned the details of the robbery, including that they would wear masks, hats, gloves, and colored contact lenses and use false names. They went together to purchase the masks, steal the gloves, and borrow the gun used in the robbery. They planned the respective roles they would play once they were inside the bank, ultimately deciding that Mr. Buckley would hold the gun while Mr. Vlahos got the money. Mr. Buckley described what occurred inside the bank, testimony that was corroborated by bank employees who were working that day. He identified himself and Mr. Vlahos in photographs taken by the bank security camera. He described what happened after they left the bank and what they did with the money they took from the bank.

[¶ 6] Mr. Hoskins testified that in early April 2001 he was involved in conversations with Mr. Vlahos, Mr. Buckley, and Mr. Munoz about robbing a bank in Fort Collins, Colorado. Mr. Hoskins was to be the driver, Mr. Munoz was to be the lookout, and Mr. Vlahos and Mr. Buckley were to rob the bank. Within a couple of weeks of that conversation, Mr. Hoskins was arrested on unrelated charges and placed in Frontier Correctional System, and he had no more involvement in discussions with Mr. Vlahos about robbing a bank.

[¶ 7] Mr. Walters also testified that he was involved in discussions with Mr. Vlahos and Mr. Buckley about robbing a bank. He

corroborated the testimony about the plan to wear gloves, masks, and colored contact lenses. He testified that Mr. Vlahos seemed to be "the brains of this operation," the person who "thought it out," and seemed to have some experience with robberies. Mr. Walters said he dropped out of the discussions in late April 2001 after he realized Mr. Vlahos and Mr. Buckley were serious about robbing a bank.

[¶ 8] Mr. Munoz testified that he, Mr. Vlahos, Mr. Buckley, and Mr. Hoskins talked five or six times about robbing a bank in Colorado. He said Mr. Vlahos did most of the talking during these discussions. Mr. Munoz dropped out of the discussions after he had a falling out with Mr. Buckley about a month before the robbery occurred.

[¶ 9] Ms. Ross, who was Mr. Vlahos' girlfriend, testified that she overheard discussions between Mr. Vlahos and Mr. Buckley about robbing a bank. Mr. Hoskins, Mr. Walters, and Mr. Munoz were part of some of the discussions. She heard them discussing details of the plan, including wearing masks, gloves, and colored contact lenses, using walkie-talkies and a police scanner, and carrying a gun. She also testified that, on the day of the robbery, Mr. Vlahos and Mr. Buckley came to her house with a black duffel bag. She said they were nervous and agitated and removed an object from the bag. They banged the object on the floor to get it open, and inside was a large amount of money, some of which they distributed to her and others.

[¶ 10] On December 19, 2001, the jury found Mr. Vlahos not guilty of aggravated robbery but guilty of conspiracy to commit the same. The trial court sentenced him to serve a term of not less than twenty-two years nor more than twenty-five years in the Wyoming Department of Corrections.

## DISCUSSION

### A. Speedy Trial

[¶ 11] Mr. Vlahos claims he was denied his right to a speedy trial because the trial court did not bring him to trial within 120 days of his arraignment, did not obtain this Court's permission to continue his trial be-yond 180 days from arraignment, and denied his request for dismissal as a result of W.R.Cr.P. 48(b) violations. The state contends there was no speedy trial violation because Mr. Vlahos in essence consented to, and in some cases requested, the delays and has not shown that prejudice resulted from the delays.

[¶ 12] We review a speedy trial claim according to the mandates of W.R.Cr.P. 48(b) and, where necessary, the four-part constitutional test articulated in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). *Hauck v. State*, 2001 WY 119, ¶ 12, 36 P.3d 597, ¶ 12 (Wyo. 2001). Mr. Vlahos was arraigned before the amendment to W.R.Cr.P. 48(b) became effective; therefore, we use the version of that rule which was in effect prior to September 1, 2001. Under W.R.Cr.P. 48(b)(2), criminal charges had to be brought to trial within 120 days after arraignment unless the trial was continued in accordance with W.R.Cr.P. 48(b)(4) and (5), which provided:

(4) Continuances not to exceed *six months* from the date of arraignment may be granted by the trial court as follows:

(A) On motion of defendant supported by affidavit; or

(B) On motion of the attorney for the state or the court if:

(i) The defendant expressly consents;

(ii) The state's evidence is unavailable and the prosecution has exercised due diligence; or

(iii) Required in the due administration of justice and the defendant will not be substantially prejudiced; and

(C) If a continuance is proposed by the state or the court, the defendant shall be notified. If the defendant objects, the defendant must show in writing how the delay may prejudice the defense.

(5) Any request to continue a trial to a date more than *six months* from the date of arraignment must be directed to the court to which appeals from the trial would

be taken and may be granted by that court in accordance with paragraph (4).

(Emphasis added.)

[¶ 13]   The amended version of this rule, which was effective September 1, 2001, requires criminal charges to be brought to trial within *180 days* following arraignment. The amended version also changes the "six month" time period in W.R.Cr.P. 48(b)(4) and (5) to "180 days." Mr. Vlahos concedes the old version of the rule applies.

[¶ 14]   The record reflects the following events concerning the speedy trial issue. Mr. Vlahos was arraigned on June 8, 2001, and the trial began on December 17, 2001– 192 days later. By order dated June 12, 2001, the trial court set the trial to begin on September 17, 2001–101 days after the arraignment and within the 120 days mandated by the rule. The June 12, 2001, setting order advised the parties as follows:

> This case is hereby, and one or more others have been or may be set for jury trial on the 17th day of September, 2001, at 9:00 a.m. If on that date, this case and one or more others remain for trial (have not been disposed of by plea or agreement for plea) one will go to trial and the others will be continued, pursuant to Rule 48(b), W.R.Cr.P.
>
> Between the date of this Order and the trial date, the attorneys for the State and the Defendant shall confer with one another and Louise Anderson of the Court to determine which of the remaining cases will be tried on the trial date above and which will be continued.
>
> *If any subsequent trial date to which the captioned case is continued is more than 120 days after the date of arraignment, and if the attorney for the defendant objects on the basis of Rule 48, the attorney shall forthwith file and serve on other counsel and the Judge, a statement of how, if at all, the delay may prejudice the defense.* If prejudice is shown, counsel and the Court will confer concerning an alternative setting.

> This order is pursuant to the mutual obligation of all counsel and the Court to insure speedy trial.

(Emphasis added.)

[¶ 15]   On August 7, 2001, Mr. Vlahos filed a demand for a speedy trial. Thereafter, the September 17 trial date came and went without a trial or an objection by the defense. The 120 days provided for in W.R.Cr.P. 48(b)(2) also came and went with no action by the court and no objection by the defense. On October 30, 2001, three weeks after the 120 days expired, the trial court issued a stacked setting order resetting the trial for November 13, 2001, the same date on which fourteen other cases were scheduled for trial. Mr. Vlahos' case was stacked eighth, meaning his trial would occur on November 13, 2001, only if seven other cases scheduled for trial on that day were resolved. The setting order again advised the parties that the trial date was contingent on resolution of other cases, Mr. Vlahos' trial would be continued again if the other cases were not resolved, and speedy trial concerns must be brought to the court's attention. No objection or statement of prejudice was filed on behalf of Mr. Vlahos.

[¶ 16]   Like the first trial date, the November 13, 2001, trial date came and went without a trial or an objection. On November 30, 2001, the court issued a third order setting the case for trial. By that order, Mr. Vlahos' case was stacked behind two other cases for trial on December 10, 2001–185 days from the arraignment date. The order contained the same language quoted above concerning the scheduling of more than one case for trial on the same day; counsels' obligation to confer with each other and the court; and defense counsel's obligation, if the trial setting was more than 120 days beyond arraignment, to object and file a statement of how prejudice might result from the delay.

[¶ 17]   Six days later, on December 6, 2001, Mr. Vlahos filed a motion to dismiss for lack of a speedy trial claiming the trial court violated W.R.Cr.P. 48(b) when it continued the trial for more than 180 days after arraignment without filing a request with the Wyoming Supreme Court in accordance with W.R.Cr.P. 48(b)(5). The state respond-

ed, arguing the motion should be denied because Mr. Vlahos caused the delay and did not show prejudice. Specifically, the state argued the initial delay was due to Mr. Vlahos' change of counsel and later delays were due to the new counsel's representation that she needed additional time in which to prepare and agreement to file a waiver of Mr. Vlahos' right to a speedy trial. The state further asserted Mr. Vlahos' motion to dismiss was a surprise and contrary to his defense counsel's statement that she would request a continuance of the trial. The trial court's administrative assistant filed her affidavit, stating that, in setting cases for trial, she conferred with trial counsel, she was informed the defense wanted a trial date beyond 180 days from arraignment and intended to waive speedy trial rights, and she relied on representations to that effect in setting the trial date beyond the time authorized by W.R.Cr.P. 48(b).

[¶ 18] On December 7, 2001, the state filed a motion with this Court pursuant to W.R.Cr.P. 48(b)(5) requesting an order allowing the trial court to continue the trial beyond six months after the arraignment. On the same day, the trial court entered an order setting the case for trial on December 17, 2001. A hearing was held on Mr. Vlahos' motion to dismiss on December 12, 2001, at which time the trial court denied the motion. Also on December 12, this Court entered an order granting the state's request to allow the trial court to continue the trial beyond six months from the arraignment. The trial began December 17, 2001–192 days after the arraignment.

■ [¶ 19] As these facts demonstrate, the trial court twice continued the trial, once from September 17 and then again from November 13, because other cases scheduled ahead of Mr. Vlahos' case were set for the same days as his trial was scheduled. These continuances were "[r]equired in the due administration of justice" under W.R.Cr.P. 48(b)(4)(B)(iii) because of the trial court's crowded docket. *Germany v. State*, 999 P.2d 63, 66 (Wyo.2000). A trial court's decision to grant a continuance under these circumstances is appropriate. *Id.* Despite the notice resetting the trial, alerting Mr. Vlahos

that his case was set behind a number of others, and requiring him to file a statement of prejudice if he objected to delaying the trial, Mr. Vlahos filed no objection or statement of prejudice when his case was not tried within 120 days and was rescheduled for trial on November 13. We hold the trial court did not err in continuing the trial to November 13 since Mr. Vlahos had the opportunity to object and demonstrate prejudice under W.R.Cr.P. 48(b)(4)(C) and failed to do so.

■ [¶ 20] We turn to the question of whether a speedy trial violation occurred when the court continued the trial a second time to December 10, 2001. Mr. Vlahos asserts "six months" as used in the version of W.R.Cr.P. 48(b) in effect at the time meant "180 days"; December 10, 2001, was more than 180 days from June 8, 2001; and, therefore, the trial court violated W.R.Cr.P. 48(b) when it continued the trial to December 10. We disagree. The word "month," unless otherwise defined, means "calendar month," or the time from any day of any of the months in the calendar to the corresponding day, if any, of the next month or, if not any, to the last day of the next month. Black's Law Dictionary 1007 (6th ed.1990). Under this definition, six months from the June 8, 2001, arraignment fell on December 8, 2001–a Saturday. Pursuant to W.R.Cr.P. 45(a), when the last day in computing a period of time falls on a Saturday, a Sunday, or a legal holiday, the period runs until the next day which is not a Saturday, a Sunday, or a legal holiday. In this case, that day was Monday, December 10, 2001.

■ [¶ 21] Having concluded that December 10, 2001, was within six months from the date of arraignment, we consider whether the other requirements of W.R.Cr.P. 48(b) were met. As was the case with the continuance from September 17 to November 13, the record indicates the continuance from November 13 to December 10 was required in the due administration of justice-the November 13 setting was a stacked setting, and one of the other stacked cases was tried on that date necessitating a second continuance of Mr. Vlahos' case. The trial court's decision to grant a continuance under these circum-

stances was appropriate. *Germany,* 999 P.2d at 66. Our inquiry does not end there, however, because, unlike the November 13 setting to which no objection was made, Mr. Vlahos filed a motion to dismiss for lack of a speedy trial in response to the December 10 setting.

[¶ 22] W.R.Cr.P. 48(b)(4)(C) provided: "[I]f the defendant objects [to a continuance proposed by the court], the defendant must show in writing how the delay may prejudice the defense." Mr. Vlahos' motion included no assertion of prejudice which might result from the delay. It does not, therefore, comply with W.R.Cr.P. 48(b)(4)(C). We have said compliance with the terms of W.R.Cr.P. 48(b) is mandatory. *Taylor v. State,* 2001 WY 13, ¶ 8, 17 P.3d 715, ¶ 8 (Wyo.2001). Absent a statement concerning how he might have been prejudiced by the delay, we hold the trial court acted appropriately in denying the motion to dismiss.

■ [¶ 23] Mr. Vlahos next contends his speedy trial right was violated when the trial was continued yet again to December 17, 2001, without a timely request to continue the trial being directed to this Court as provided in W.R.Cr.P. 48(b)(5), which addressed continuances beyond six months from arraignment. Mr. Vlahos argues in essence that both the state's request and this Court's order granting that request were untimely.

[¶ 24] There is no question the December 17 trial date was more than six months from the date of arraignment. Pursuant to the rule, therefore, a request for continuance was to be directed to and considered by this Court in accordance with W.R.Cr.P. 48(b)(5). As set forth above in the recitation of facts relating to the speedy trial claim, the state submitted a motion to this Court on December 7, 2001–the day before the six-month period ended. Although this Court did not enter its order granting the motion until December 12, 2001, W.R.Cr.P. 48(b)(5) contains no requirement that the order be entered within the six-month period. The rule speaks to the "*request* to continue a trial to a date more than six months from the date of arraignment." W.R.Cr.P. 48(b)(5) (emphasis added). At most, the conclusion that might be

reached from this language is that requests to continue trials more than six months from date of arraignment must be filed within the six-month period. That was done, and so we hold there was no speedy trial violation, particularly under the facts of this case where the evidence indicated defense counsel represented to the trial court and the state that Mr. Vlahos wanted the trial continued beyond the six-month period, representations the court relied on in continuing the trial. Mr. Vlahos' citation to our abbreviated opinion in *Hallock v. State,* No. 00–326 (Nov. 1, 2001) (per curiam), does not change this result. *Hallock* is distinguishable from this case in that no request to continue the trial beyond the six months was ever made to this Court and the state conceded that fact.

## B. Sufficiency of the Evidence

[¶ 25] Mr. Vlahos' sufficiency of the evidence claim is twofold. First, he claims the state relied exclusively on testimony from accomplices or coconspirators and such testimony was not sufficient by itself to support a conviction for conspiracy under Wyoming law. Second, he contends, even if all the witnesses were not accomplices or coconspirators, the only witness whose testimony connected him with acts in furtherance of the conspiracy—Mr. Buckley—was unquestionably an accomplice or coconspirator. Without corroboration of Mr. Buckley's testimony by other witnesses, Mr. Vlahos argues, there was insufficient evidence to support the conviction. The state contends Mr. Vlahos' underlying premise is incorrect. It asserts a conviction may be upheld under Wyoming law upon the uncorroborated testimony of accomplices. According to the state, no testimony corroborating the testimony of Mr. Buckley or the other witnesses was necessary.

[¶ 26] In presenting his arguments, Mr. Vlahos blurs the terms accomplice and coconspirator but argues law applicable to coconspirators. The state for its part ignores the law relating to coconspirators, focusing instead on the law applicable to accomplices. Because these are two distinct concepts involving two distinct rules of law, we provide

the following discussion for purposes of clarification.

[¶ 27] An accomplice, or accessory before the fact, is a person who knowingly aids or abets in the commission of a felony or who counsels, encourages, hires, commands, or procures a felony to be committed. Wyo. Stat. Ann. § 6-1-201(a) (LexisNexis 2003); *Wheeler v. State*, 691 P.2d 599, 601 (Wyo. 1984). To fall within this definition of accomplice, a person must actively participate in or encourage the crime and have the intent to accomplish the same criminal end as the principal. *Wheeler*, 691 P.2d at 601. For a defendant to be convicted as an accomplice, it must be proven that someone committed the substantive criminal offense and the defendant associated himself with and participated in the accomplishment and success of the criminal venture. *Virgilio v. State*, 834 P.2d 1125, 1127 (Wyo.1992).

[¶ 28] Wyoming law is that a conviction may be had upon the unsupported testimony of an alleged accomplice. *Vigil v. State*, 926 P.2d 351, 360 (Wyo.1996). Thus, in Wyoming as well as in other states that follow the common law, no corroboration of accomplice testimony is required, and a conviction can be sustained on such testimony alone if it is convincing and credible. *Ostrowski v. State*, 665 P.2d 471, 487 (Wyo. 1983); *Filbert v. State*, 436 P.2d 959, 960 (Wyo.1968). Application of this principle to the present facts leads to the conclusion that no corroborating evidence was required if the witnesses Mr. Vlahos refers to could be properly characterized as accomplices.

[¶ 29] Turning to the question of coconspirators, conspiracy is defined in Wyoming as follows:

(a) A person is guilty of conspiracy to commit a crime if he agrees with one (1) or more persons that they or one (1) or more of them will commit a crime and one (1) or more of them does an overt act to effect the objective of the agreement.

(b) A person is not liable under this section if after conspiring he withdraws from the conspiracy and thwarts its success under circumstances manifesting voluntary and complete renunciation of his criminal intention.

Wyo. Stat. Ann. § 6-1-303(a), (b) (LexisNexis 2003). In numerous cases decided in this jurisdiction and elsewhere, the rule has evolved that a coconspirator's out-of-court statement is not sufficient to support a conspiracy conviction; corroborating evidence is required. *Jasch v. State*, 563 P.2d 1327, 1334 (Wyo.1977). This rule developed because, although such statements are not considered hearsay under W.R.E. 801(d)(2)(E), their use at trial raises concerns about reliability since the declarant is not subject to cross-examination or juror scrutiny. Under the rule, the trial court, prior to admitting the coconspirator statement, must determine independent evidence exists showing (1) a conspiracy existed, (2) the declarant and the defendant were involved in the conspiracy, and (3) the statement was made during the course of and in furtherance of the conspiracy. *Jandro v. State*, 781 P.2d 512, 521 (Wyo.1989). Mr. Vlahos argues this rule extends not only to a coconspirator's *out-of-court* statement but to a coconspirator's *in-court* testimony, such as Mr. Buckley's testimony at his trial. In support of this assertion, he cites *Grable v. State*, 649 P.2d 663 (Wyo.1982), a case involving use at the defendant's retrial of coconspirator testimony given at his first trial.

[¶ 30] In considering whether sufficient evidence supported the conspiracy conviction in *Grable*, this Court cited the rule that evidence independent of the coconspirator's statement must be presented. We then examined the evidence other than the coconspirator's prior testimony and upheld the conviction on the basis of that evidence. *Grable*, 649 P.2d at 677. While this Court did not expressly hold that evidence independent of a coconspirator's *in-court testimony* must be presented, the approach taken might be read to suggest that is so. Courts that have expressly addressed the question, however, have reached a contrary result.

[¶ 31] In *United States v. Smith*, 692 F.2d 693, 697 (10th Cir.1982), the defendant challenged the trial court's admission of a coconspirator's in-court testimony contending that such testimony was proper only after

independent evidence showed a conspiracy existed. The court of appeals stated:

> The flaw in Smith's argument is simply that Rule 801(d)(2)(E) and the cases construing it are irrelevant to the *direct* testimony of a coconspirator. By definition, hearsay is "a statement, *other than one made by the declarant while testifying at the trial or hearing,* offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c) (emphasis added). There is absolutely no need to fit [the coconspirator's] *in-court* statements into the coconspirator provision of Rule 801(d)(2)(E). [The coconspirator's] testimony constituted sufficient independent evidence of a conspiracy and Smith's participation therein.

692 F.2d at 697–98 (citation omitted).

[¶ 32] Faced with the same argument in *Laughlin v. United States,* 385 F.2d 287, 292 (D.C.Cir.1967), the court said the argument was based on a misunderstanding of the rule requiring evidence independent of a coconspirator's statement to establish a conspiracy existed. "That rule," the court said, "applies only to out-of-court (i.e., hearsay) statements of a coconspirator. It does not exclude proof of a conspiracy by the direct testimony under oath of a party to it." 385 F.2d at 292 (citation omitted).

[¶ 33] Similarly, in *United States v. Szabo,* 789 F.2d 1484, 1487 (10th Cir.1986), the court upheld a conspiracy conviction over the defendant's objection that it was based upon coconspirator testimony. The court quoted *Smith,* 692 F.2d at 697–98, for the principle that the requirement of evidence independent of a coconspirator's out-of-court statement does not apply to a coconspirator's in-court testimony and then said:

> There is no constitutional requirement that such testimony be examined for trustworthiness before being placed before the jury. Rather, the Confrontation Clause, in its optimum application, envisions: "[A] personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States,* 156 U.S. 237, 242–43, 15 S.Ct. 337, 39 L.Ed. 409 (1895). . . .

789 F.2d at 1487.

[¶ 34] These cases are persuasive. *Jasch,* 563 P.2d 1327, to which the *Grable* Court cited, involved a coconspirator's out-of-court statement. All the other Wyoming cases requiring independent evidence of conspiracy, except *Grable,* likewise involved a coconspirator's out-of-court statement where there was no opportunity to cross-examine the declarant or for the jury to assess his reliability. Under those circumstances, evidence independent of the coconspirator's statement corroborating the conspiracy is necessary. For the reasons quoted from *Szabo,* 789 F.2d at 1487, above, the same concerns do not arise when the coconspirator provides direct testimony at trial.

[¶ 35] We hold that independent evidence corroborating a conspiracy is not necessary when a coconspirator appears at trial and presents direct testimony of the conspiracy and the defendant's involvement therein. A coconspirator's in-court testimony is sufficient independent evidence to support a conspiracy conviction. We overrule *Grable* to the extent it can be read to say such evidence is not sufficient and independent evidence is required even when the coconspirator testifies at trial.

[¶ 36] Having attempted to clarify Wyoming law on accomplice statements and coconspirator testimony, we turn to the specific question of whether sufficient evidence supported Mr. Vlahos' conviction for conspiracy to commit aggravated robbery. The standard of review for sufficiency of the evidence issues is well established:

> When reviewing a sufficiency of the evidence claim in a criminal case, we must determine whether a rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt. We do not consider conflicting evidence presented by the unsuccessful party, and afford every favorable inference which

may be reasonably and fairly drawn from the successful party's evidence. We have consistently held that it is the jury's responsibility to resolve conflicts in the evidence. "We will not substitute our judgment for that of the jury, . . . our only duty is to determine whether a quorum of reasonable and rational individuals would, or even could, have come to the same result as the jury actually did." [*Bloomquist v. State*, 914 P.2d 812, 824 (Wyo. 1996)].

*Williams v. State*, 986 P.2d 855, 857 (Wyo. 1999) (some citations omitted); *see also Urbigkit v. State*, 2003 WY 57, ¶ 44, 67 P.3d 1207, ¶ 44 (Wyo.2003).

[¶ 37]   Mr. Vlahos identifies five witnesses as "accomplices/coconspirators" whose testimony against him, he claims, was insufficient to support the conviction absent independent evidence: Mr. Buckley, Mr. Munoz, Mr. Hoskins, Mr. Walters, and Ms. Ross. All these witnesses appeared and testified at trial and were subjected to defense counsel's cross-examination. Because we concluded that coconspirators' in-court testimony as well as accomplices' statements can support a conviction without independent corroborating evidence, it is not necessary for us to consider whether the five witnesses identified by Mr. Vlahos were accomplices or coconspirators. Even if we assume they properly fell into either category, corroborating evidence of their testimony was not required under Wyoming law.

[¶ 38]   We look first to Mr. Buckley's testimony. He provided direct testimony that he and Mr. Vlahos planned and carried out the bank robbery. He described details of the planning discussions, the robbery itself, and what occurred in its aftermath. The jurors had the opportunity to observe Mr. Buckley, scrutinize his demeanor, and determine for themselves whether he was credible. Apparently, they found his testimony that Mr. Vlahos was involved in planning the robbery credible but were not convinced Mr. Vlahos actually participated in the robbery. Under our rules of law concerning accomplice statements and coconspirator testimony, Mr. Buckley's testimony was sufficient independent of the other evidence presented

to support the conviction on the conspiracy charge.

[¶ 39]   Mr. Haskins, Mr. Walters, and Mr. Munoz each testified that Mr. Vlahos was very much involved in planning the robbery. Mr. Walters testified that Mr. Vlahos was the leader of the plan to rob the bank. Mr. Munoz similarly testified that Mr. Vlahos did most of the talking during the planning discussions. The testimony of these three witnesses, considered in light of the other evidence presented, was sufficient to support the conviction.

[¶ 40]   Ms. Ross testified that she overheard discussions between Mr. Vlahos and the others concerning robbing a bank. She further testified that, on the day of the robbery, Mr. Vlahos and Mr. Buckley came to her house with a large amount of money which they distributed among themselves and others. Her testimony describing the clothes they were wearing matched the photographs taken by the bank security camera.

[¶ 41]   We assume the jury duly considered all the testimony and gave it the weight to which it was entitled. *Vargas v. State*, 963 P.2d 984, 991 (Wyo.1998). Given the substantial evidence from a variety of witnesses of Mr. Vlahos' involvement in an agreement to commit bank robbery, we uphold his conspiracy conviction.

**C.   Failure to Properly Instruct the Jury**

[¶ 42]   Mr. Vlahos claims the trial court failed to properly instruct the jury on Wyoming law concerning accomplice/coconspirator testimony. Specifically, he claims error occurred when the trial court did not instruct the jury that conspiracy cannot be proved by the testimony or statement of a coconspirator alone and accomplice testimony must be viewed with caution and supported by corroborating evidence. Defense counsel offered no such instructions, nor did she object to the trial court's proposed instructions. We, therefore, review the claim under the plain error standard, and Mr. Vlahos must prove that a clear and unequivocal rule of law was violated in a clear and obvious way resulting in denial of a substantial right and material prejudice. *Urbigkit*, 2003 WY 57, ¶ 41, 67 P.3d 1207.

[¶ 43] As discussed in the preceding section of this opinion, the clear and unequivocal rule of law in Wyoming and elsewhere has been that conspiracy cannot be proved by a coconspirator's *out-of-court statement* alone; however, a coconspirator's in-court testimony is sufficient to sustain a conspiracy conviction. Thus, the trial court did not violate a clear and unequivocal rule of law by not instructing the jury to that effect, and Mr. Vlahos has not established plain error occurred in that regard.

[¶ 44] Without citing any Wyoming cases, Mr. Vlahos argues that plain error occurred when the trial court failed to give an instruction cautioning the jury that accomplice testimony should be viewed with care and should not be the basis for a conviction absent corroborating evidence. As set out above, Wyoming law is clear that a conviction may be had upon an accomplice's uncorroborated testimony. *Ostrowski*, 665 P.2d at 487. Therefore, no plain error occurred when the trial court failed to instruct the jury that corroborating evidence was required.

[¶ 45] As for whether plain error occurred when the trial court did not give a cautionary instruction concerning accomplice testimony, we said in *Jaramillo v. State*, 517 P.2d 490, 492 (Wyo.1974) (emphasis added):

On the general subject of instructions concerning accomplices, we find some guidance in Judge Blume's analysis in *State v. Grider*, 74 Wyo. 88, 284 P.2d 400, 407, 74 Wyo. 111, 288 P.2d 766, when he noted that the court had discussed accomplice instructions in *State v. Callaway*, 72 Wyo. 509, 267 P.2d 970, holding that where the testimony necessary to convict is given by an accomplice without corroboration the trial court must advise and caution the jury as to the danger attendant upon their accepting uncorroborated testimony of an accomplice. *While he pointed out a lack of any pronouncement by this court that a precautionary instruction must be given in all cases where an accomplice testifies, he did observe peripherally that it was doubtless safer for the trial court to give a precautionary instruction.* He may have had in mind a similar statement by Judge Learned Hand, *United States v.*

*Becker,* 2 Cir., 62 F.2d 1007, 1009. The complete principle applicable is, "If no request was made for a cautionary instruction in the trial court, nor objection made to failure to give the instruction, the trial court will not be reversed, unless the circumstances of the case are so unusual that the failure to caution the jury can be regarded as plain error." 2 Wright, Federal Practice and Procedure: Criminal § 490, p. 315 (1969).

Given the lack of a clear precedent in Wyoming requiring cautionary instructions on accomplice testimony, we hold the trial court did not violate a clear and unequivocal rule of law in not giving a cautionary instruction.

**D. Failure to Find as a Matter of Law that Witnesses Were Accomplices/Coconspirators or Submit the Question to the Jury**

[¶ 46] Mr. Vlahos contends plain error occurred when the trial court failed to find as a matter of law that certain witnesses were accomplices and/or coconspirators or to submit the question to the jury. Mr. Vlahos points to no authority to support this contention. However, in *Grable v. State*, 601 P.2d 1001, 1003 (Wyo.1979), this Court said: "It is reversible error for the trial judge to remark that a witness is an accomplice of the person on trial since this carries the implication that the defendant's guilt has been determined even though that fact is peculiarly within the province of the jury." Under this principle, it would have been error for the trial court to find as a matter of law that any of the witnesses were Mr. Vlahos' accomplices or coconspirators.

[¶ 47] As for whether the trial court was required to submit the question to the jury, we are not aware of a clear and unequivocal rule requiring such submission, and Mr. Vlahos cites us to none. Under these circumstances, we hold no plain error occurred.

**E. Ineffective Assistance of Counsel**

[¶ 48] Mr. Vlahos argues defense counsel was ineffective in failing to request that the trial court instruct the jury on the law regarding accomplice/coconspirator testimony. Because the law does not require

corroborating evidence of an accomplice's testimony or a coconspirator's in-court testimony, there is no basis for Mr. Vlahos' claim of ineffective assistance of counsel. While defense counsel certainly could have requested a cautionary instruction regarding the care with which accomplice testimony should be viewed, her failure to do so did not constitute "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *see also Dickeson v. State,* 843 P.2d 606, 609 (Wyo.1992).

[¶ 49]   Affirmed.