FOX, Justice.
[¶1] A jury convicted Joshua C. Osban of possession of methamphetamine. Mr. Osban appeals his conviction, arguing the State failed to bring him to trial within 180 days following his arraignment as required by Wyoming Rule of Criminal Procedure 48. He also claims the district court should have suppressed the methamphetamine found in a container inside his truck because the search of the container was unreasonable. We reverse.
ISSUES
[¶2] Mr. Osban raises two issues:
I. Whether Mr. Osban's right to a speedy trial under W.R.Cr.P. 48 was violated when his trial commenced 194 days after his arraignment.
II. Whether the district court erred when it denied Mr. Osban's motion to suppress the methamphetamine officers discovered in his truck.
*741 Because we reverse on the speedy trial issue, we do not address the motion to suppress.
FACTS
[¶3] Cheyenne Police Officer Jonathan Smith responded to a report that a man had fired a gun at a party. When he arrived at the scene, the homeowner told Officer Smith that her ex-husband, Mr. Osban, had come to the house and argued with her boyfriend, Christopher Cash. She said the argument ended when Mr. Osban shot a gun at Mr. Cash and then drove away. Another witness told Officer Smith that she saw some mud splatter beside Mr. Cash's leg after the shot was fired. Officers found a .22 Super X casing in the area where witnesses indicated Mr. Osban had fired the shot.
[¶4] Mr. Osban was later apprehended at his home, and a search revealed a .22 caliber pistol, cartridges, and methamphetamine. The State charged Mr. Osban with one count of aggravated assault and battery, in violation of Wyo. Stat. Ann. § 6-2-502(a)(i) (LexisNexis 2017), and one count of possession of methamphetamine, in violation of Wyo. Stat. Ann. § 35-7-1031(c)(ii) (LexisNexis 2017). Mr. Osban filed a demand for speedy trial, and he pleaded not guilty to both charges at his arraignment on May 5, 2017. In its criminal case management order, the district court acknowledged that Mr. Osban's 180-day trial deadline under Rule 48 would run on November 1, 2017, and it set Mr. Osban's trial for August 14, 2017. The district court later reset the trial for October 16, 2017.
[¶5] On October 2, 2017, the State filed a petition to revoke Mr. Osban's bond after he tested positive for methamphetamine and alcohol. On October 5, 2017, the district court ordered the clerk of court to issue a bench warrant, which it did the next day. Defense counsel met with Mr. Osban and informed him it was important he turn himself in to law enforcement in order to maintain the October 16, 2017 trial date. On October 12, 2017, Mr. Osban surrendered himself at the Laramie County Detention Center, where he was served with the warrant. The next day, Mr. Osban's counsel filed a notice that the bench warrant had been executed and Mr. Osban was in custody. Later that day, counsel was informed by district court staff that Mr. Osban's October 16, 2017 trial date had been vacated. Written notice of the vacated trial setting was not filed until October 25, 2017, when an order on scheduling conference and an order resetting the jury trial were filed. The latter order stated the October 16, 2017 trial had been vacated because Mr. Osban had "absconded in violation of his bond," and both orders reset the trial for November 13, 2017. On November 6, 2017, Mr. Osban filed a motion to dismiss the charges against him because his trial had not taken place on or before November 1, 2017-his Rule 48 deadline. On November 9, 2017, the district court held a hearing on the matter and denied the motion. The district court determined it had not violated Rule 48(b) because when a warrant is issued, the "defendant is unavailable" for trial. It also mentioned that the trial stack required the continuance in the due administration of justice.
[¶6] After being reset one last time, Mr. Osban's trial commenced on November 15, 2017. The jury convicted him of possessing methamphetamine but acquitted him of the aggravated assault and battery charge. The district court sentenced Mr. Osban to two to five years of imprisonment but suspended the sentence in favor of three years of supervised probation.[1] Mr. Osban filed a timely notice of appeal.
DISCUSSION
W.R.Cr.P. 48 Speedy Trial
[¶7] Mr. Osban claims his right to a speedy trial was violated when the district court sua sponte vacated the October 16, 2017 trial setting without giving him an opportunity to object, resulting in his trial taking place after the 180-day deadline required by W.R.Cr.P. 48(b).[2] Mr. Osban filed a motion *742 to dismiss on this basis, and the district court denied the motion. We review speedy trial claims under Rule 48 de novo. Castellanos v. State , 2016 WY 11, ¶ 48, 366 P.3d 1279, 1294 (Wyo. 2016).
[¶8] The constitutional right to a speedy trial has amorphous contours. Barker v. Wingo , 407 U.S. 514, 522, 92 S.Ct. 2182, 2188, 33 L.Ed.2d 101 (1972). The purpose of W.R.Cr.P. 48, and similar rules across the country, is to provide structure to that right. See Castellanos , 2016 WY 11, ¶ 49, 366 P.3d at 1294. The rule's provisions "are mandatory." Rodiack v. State , 2002 WY 137, ¶ 9, 55 P.3d 1, 3 (Wyo. 2002) (citations omitted). The rule provides for trial within 180 days of arraignment, with certain exceptions. Mr. Osban was arraigned on May 5, 2017, and the district court acknowledged that Mr. Osban's trial must be held on or before November 1, 2017, to comply with the rule. Continuances beyond the 180 days are excusable in certain situations:
(b)(4) Continuances exceeding 180 days from the date of arraignment may be granted by the trial court as follows:
(A) On motion of defendant supported by affidavit; or
(B) On motion of the attorney for the state or the court if:
(i) The defendant expressly consents;
(ii) The state's evidence is unavailable and the prosecution has exercised due diligence; or
(iii) Required in the due administration of justice and the defendant will not be substantially prejudiced; and
(C) If a continuance is proposed by the state or the court, the defendant shall be notified. If the defendant objects, the defendant must show in writing how the delay may prejudice the defense.
W.R.Cr.P. 48(b)(4). Despite its mandatory nature, neither the rule nor this Court imposes a "set of specific procedural requirements to which a court must adhere in re-setting a trial date[.]" Castellanos , 2016 WY 11, ¶ 63, 366 P.3d at 1298.
[¶9] The district court continued the trial because it believed that Mr. Osban had "absconded in violation of his bond," making him unavailable for the proceedings under Rule 48(b)(6). We cannot agree with the district court's conclusion. The arrest warrant was not issued because Mr. Osban had absconded or failed to appear for testing or other proceedings; instead, the State alleged he violated his bond because he had tested positive for alcohol and methamphetamine. We do not believe the rule's phrase "unavailable for any proceeding" is so broad as to encompass an outstanding arrest warrant for a bond violation unrelated to the location of a defendant, particularly when the defendant has not actually missed any proceedings. The district court's statement that Mr. Osban was unavailable under Rule 48(b)(6) is not supported by any facts in the record.
[¶10] We turn to the State's argument that the due administration of justice under (b)(4)(B)(iii) required the continuance, and perhaps it might have. We appreciate that the district court was aware of the speedy trial deadline in Mr. Osban's case, and specifically left his case on the October 16, 2017 trial stack despite defense counsel's suggestion that "I'm not in a rush to try it on the 16th of October."[3] As the trial date approached, the court had to account for the "17 or 18" other cases on the October 16, 2017 trial stack in conjunction with the fact *743 that there was an unexecuted warrant for Mr. Osban's arrest. Rule 48(b)(4)(B)(iii) recognizes that continuances beyond the 180-day threshold are appropriate when "[r]equired in the due administration of justice," and the district court's ability to manage a crowded docket can fall into this category. Germany v. State , 999 P.2d 63, 66 (Wyo. 2000).
[¶11] Here, however, the district court ignored the procedures required when a continuance is proposed "in the due administration of justice" under (b)(4)(B)(iii), and instead found retroactively that its crowded docket compelled the continuance. Most district courts have very crowded dockets. If they are permitted to ignore the speedy trial rule and retroactively justify the delay, Rule 48 's speedy trial requirement is rendered meaningless.[4] Further, the language of the rule does not permit the lack of formality that occurred here.
[¶12] Rule 48(b)(4)(C) requires that the court provide the defendant notice of a proposed continuance and an opportunity to object and establish how the delay "may prejudice the defense."
(C) If a continuance is proposed by the state or the court, the defendant shall be notified. If the defendant objects, the defendant must show in writing how the delay may prejudice the defense.
[¶13] The district court did not comply with this requirement. On October 13, 2017, court staff informed Mr. Osban's attorney, not that the court proposed moving his trial date, but that the court had already vacated the original setting. There is no indication in the record that the court informed Mr. Osban's attorney at that time that the court had reset the trial, only that it had vacated the original setting. It was not until almost two weeks later that the court reset Mr. Osban's trial beyond the required 180 days; again, after it had already vacated the original setting without allowing Mr. Osban the chance to object or otherwise respond to a proposed continuance. This procedure violated the notice and opportunity to be heard purpose of subsection (b)(4)(C).
[¶14] The State cites Vlahos v. State , 2003 WY 103, 75 P.3d 628 (Wyo. 2003), in support of its argument that Mr. Osban was required to show prejudice by the delay. But in Vlahos , unlike here, the court had put the defendant on notice that his case might be continued and that he should bring speedy trial concerns to the court's attention. Id. at ¶¶ 14-15, 75 P.3d at 633. Without such notice, it was not Mr. Osban's burden to establish prejudice under (b)(4)(C).
[¶15] A court must comply with (b)(4)(C) before it continues a trial. See Taylor v. State , 2001 WY 13, ¶ 12, 17 P.3d 715, 720 (Wyo. 2001) ("As Germany [v. State , 999 P.2d 63 (Wyo. 2000) ] decided, both the Court and the State made the efforts required by W.R.Cr.P. 48(b) to notify Germany that its crowded docket required a continuance, and he had the opportunity to object and show prejudice. Taylor asserts that did not happen in this case, and our review reveals nothing in the record to contradict his assertion.") (internal citation omitted); Sides v. State , 963 P.2d 227, 230 (Wyo. 1998) ("The district judge heard appellant's objections, then continued the trial for the valid reasons set forth above.") (emphasis added); Springfield v. State , 860 P.2d 435, 452 (Wyo. 1993) ; Whiteplume v. State , 841 P.2d 1332, 1336 (Wyo. 1992) ("From the trial court's description of its considerations for continuing the [ ] trial date, as contained in its order, it is clear the trial court continued the trial date in the interests of the due administration of justice and after hearing from appellant's lawyer that he favored a continuance.") (emphasis added).
[¶16] Although we have said that we do not "impose a set of specific procedural requirements to which a court must adhere in re-setting a trial date," Castellanos , 2016 WY 11, ¶ 63, 366 P.3d at 1298, the requirement that a court wait for the defendant's response before ordering a continuance in the "due administration of justice" is critical to the *744 effectiveness of the speedy trial rule, and should have been observed here. The district court should have described the facts related to its docket, made an appropriate finding that a continuance was proposed in the due administration of justice, and immediately notified Mr. Osban so he could object and present evidence of any prejudice he may suffer. Because that is not what happened, Mr. Osban's right to speedy trial was violated.
[¶17] Mr. Osban's conviction and sentence are reversed and remanded to the district court.[5]
KAUTZ, J., dissenting, in which BOOMGAARDEN, J., joins.
[¶18] I respectfully dissent. The district court adequately complied with W.R.Cr.P. 48.
[¶19] Rule 48(b)(4)(B)(iii) permits continuances exceeding 180 days after arraignment if (1) required in the due administration of justice, and (2) the defendant will not be substantially prejudiced. The record in this case unequivocally demonstrates that each of these requirements was satisfied in Mr. Osban's case. The rule creates some procedural requirements for trial continuances exceeding 180 days from arraignment, when, as here, the continuance is "proposed" by the court. In such a circumstance, the defendant (1) must be notified, and (2) given the opportunity to object. Rule 48(b)(4)(C). The record indicates that each of these requirements was met in Mr. Osban's case.
Required in the Due Administration of Justice
[¶20] Some district courts have heavy criminal dockets and must "stack" criminal trial settings. Reality dictates that only one case set for trial on the stacked date can actually go to trial, and the others must either be resolved without a trial or be continued to a later trial date. When such a continuance is necessary beyond the 180-day limit of Rule 48, we have recognized those continuances as "required in the due administration of justice." See, e.g. , Germany v. State, 999 P.2d 63 (Wyo. 2000), Taylor v. State, 2001 WY 13, 17 P.3d 715 (Wyo. 2001). Considering the district courts' caseloads, it is appropriate that Rule 48 provide an exception for such continuances.
[¶21] Here, the district court issued a Criminal Case Management Order on May 8, 2017, which stated that the case was on a trial stack and required counsel to confer and advise the court about prioritization of stacked cases for trial. Initially, Mr. Osban's case was one of 23 cases set for trial on August 14, 2017. After a scheduling conference on July 7, 2017, the district court reset 13 of those cases, including Mr. Osban's, for trial on September 11, 2017. By August 7, 2017, 24 other cases (the original 13 plus 11 others) were set for trial on September 11, 2017. The district court again held a scheduling conference for all of those cases and reset 11 cases for trial on October 16, 2017. Mr. Osban's case, however, was scheduled with nine others for a second scheduling conference held on September 1, 2017. Following that meeting with counsel, the district court added six of those nine cases, including Mr. Osban's, to the October 16, 2017 setting. Although cases were dropping off the trial stack, new cases were added, so by mid-September there were 24 cases scheduled to go to trial on October 16, 2017.[6] On September 22, 2017, the district court held another scheduling conference and reset many of those cases for later trial dates. However, it noted that the next available trial date would *745 go beyond the Rule 48 time and kept Mr. Osban's case and ten others set for October 16, 2017.
[¶22] On October 2, 2017, the State requested witness subpoenas for Mr. Osban's trial. (Presumably, it also requested subpoenas for the other ten cases also set for trial on October 16, 2017). That same day, the State requested a bench warrant for Mr. Osban because it claimed he had violated conditions of his bond. The court issued that warrant on October 5, 2017, and the clerk of court provided a copy of the warrant to Mr. Osban's counsel on October 6, 2017. Although Mr. Osban's counsel advised him to turn himself in, Mr. Osban did not do so until October 12, 2017. During that time, counsel and the district court had to evaluate which of 11 cases would go to trial on October 16, 2017, and which would have to be continued so that proper preparation occurred for trial, and so that witnesses for other cases could be notified.
[¶23] Mr. Osban's counsel advised the district court that his client was in jail on Friday, October 13, 2017. Court staff told counsel that the Monday, October 16, 2017 trial setting for Mr. Osban had been vacated the previous day. One of the other cases set for October 16, 2017 went to trial. The district court held another scheduling conference on October 20, 2017, at which it re-set Mr. Osban's trial for November 13, 2017. Mr. Osban's attorney participated in that hearing. The district court issued a written order reciting the decisions made at the scheduling conference on October 25, 2017.
[¶24] These facts make it clear that continuance of Mr. Osban's trial past November 1, 2017, "was required in the due administration of justice." The district court faced a nearly impossible task of getting defendants to trial, particularly in light of its other obligations. The court conducted five scheduling conferences for Mr. Osban and others in an effort to get cases to trial timely. There were 11 cases scheduled for trial before a single judge, in a single courtroom, on October 16, 2017. The due administration of justice required the district court to continue ten of the cases set for that date.
No Substantial Prejudice to Mr. Osban
[¶25] Nothing in the record indicates that on October 12, 2017, or on October 20, 2017, a continuance to November 13, 2017 would result in any substantial prejudice to Mr. Osban. In fact, Mr. Osban cannot point to any prejudice resulting from the delay, even when the continuance is viewed in hindsight.
[¶26] Mr. Osban argues that he was prejudiced by the anxiety he suffered in not knowing when his trial would occur. The only time he would have been uncertain about a trial date was from October 13 to October 20, 2017. The stress or anxiety about a trial setting for a week cannot constitute "substantial prejudice." This is especially true where, as here, the court had evidenced its awareness of the Rule 48 deadline. He also complains that he lost his liberty and some property due to his various bond violations and revocations. Of course, those are consequences of his bond violations, and are not prejudice suffered as a result of his trial date.
[¶27] The record shows that Mr. Osban was not prejudiced by any continuance. He has not pointed to any part of his defense which was affected in any manner by moving his trial to a date two weeks beyond the Rule 48 time. To the contrary, three weeks before the continuance Mr. Osban's counsel stated, "I'm not in a rush to try it on the 16th of October," making a tacit acknowledgment that no prejudice would result from resetting the trial.
Notice to Mr. Osban
[¶28] Rule 48(b)(4)(C) requires that when a continuance beyond 180 days after arraignment is proposed by the court, "the defendant shall be notified." There is no doubt that the defendant was notified here. At a hearing on September 22, 2017, the district court told Mr. Osban's counsel that any continuance past October 16, 2017 would result in a trial beyond the Rule 48 time. The district court's staff then notified counsel on October 12, 2017 that the continuance had occurred. Mr. Osban's attorney participated in a scheduling conference on October 20, 2017 when the trial was reset for November 13, 2017. Finally, *746 the court provided counsel with a written order moving the trial to November 13, 2017.
Opportunity to Object
[¶29] Rule 48 implies that a defendant be given the opportunity to object to a continuance beyond 180 days after arraignment. Logically, the opportunity must exist before the 180 days has passed, so the trial court can consider the objection with any prejudice claimed by the defendant in time to provide a trial within 180 days. Mr. Osban had the opportunity to object well before the Rule 48 time expired. His counsel knew of the continuance 18 days before that, on October 13, 2017. He participated in a scheduling conference on October 20, 2017 and received a written order on October 25, 2017. However, Mr. Osban's attorney did not object before the time expired. Rule 48 requires objections to include a written showing of "how the delay may prejudice the defense." Mr. Osban had two and one-half weeks to do so, but did not.
[¶30] An objection would have given the district court the opportunity to consider the prejudice alleged by Mr. Osban and determine whether a continuance under Rule 48(b)(4)(B)(iii) was appropriate. Mr. Osban instead waited until the speedy trial deadline passed and then filed a motion to dismiss. See Vlahos v. State , 2003 WY 103, ¶ 19, 75 P.3d 628, 634 (Wyo. 2003) (trial court did not err in continuing trial when defendant had the opportunity to object and demonstrate prejudice under Rule 48(b)(4)(C) but did not do so, even when the notice resetting trial was filed over a month after the original trial date had passed and three weeks after the Rule 48(b) deadline had passed). Rule 48(b)(1) specifies that "it is the responsibility of the court, counsel and the defendant to insure that the defendant is timely tried." (emphasis added). Mr. Osban had the opportunity to timely object but did not do so.
[¶31] The majority opinion relies heavily on the following language in Rule 48(b)(4)(C) : "if a continuance is proposed by the state or the court, the defendant shall be notified." (emphasis added). It interprets the term "is proposed" as requiring a specific procedure whereby the court first informs a defendant that a continuance beyond the 180 days "is proposed," the defendant has some unspecified time to respond, and the court later enters an order continuing the trial beyond the Rule 48 deadline. This interpretation goes beyond the language of the rule. Rule 48 does not mandate "a set of specific procedural requirements to which a court must adhere in re-setting a trial date." Castellanos , ¶ 63, 366 P.3d at 1298.
[¶32] The multi-step process envisioned by the majority requires that the trial court "wait for the defendant's response before ordering a continuance." That process would complicate the court's management of its stacked settings, add to the workload of the trial court, require consideration of continuances earlier, and, in total, make the process inefficient.
[¶33] Until the 180-day limit expired on November 1, 2017, the district court's trial settings were always subject to review and resetting. They were "proposed" continuances beyond the deadline and could have been adjusted if appropriate. The trial judge did not create an unchangeable trial setting, but by ordering a continuance, "proposed" a setting that went beyond the Rule 48 time.
Unavailability Order
[¶34] The district court held a scheduling conference on October 20, 2017, and at that conference set Mr. Osban's trial for November 13, 2017. It issued a written order from that hearing on October 25, 2017. The written order addresses numerous cases on the court's trial stack and indicates an obvious effort to manage the docket in the due administration of justice. Also on October 25, 2017, however, the district court issued a separate order addressing only Mr. Osban's case. That order states that it was necessary to schedule a new trial date for Mr. Osban because he "absconded in violation of his bond " but then set the trial for November 13, 2017, just as the prior order had.
[¶35] Nothing in the record indicates Mr. Osban "absconded in violation of his bond." It is unknown why the second order issued on October 25, 2017 included such a statement, and it is unknown why the order was *747 entered at all. Mr. Osban's November 13, 2017 trial date already was set. Although the trial judge mistakenly thought a defendant was "unavailable" for trial when a warrant is outstanding, the facts here clearly show a continuance was required in the due administration of justice. "This Court will affirm the district court's decision on any legal ground appearing in the record." Short v. State , 2009 WY 52, ¶ 9, 205 P.3d 195, 198 (Wyo. 2009). The record establishes that the district court complied with Rule 48. I would affirm.

By the time Mr. Osban's appeal matured before this Court, the district court had revoked Mr. Osban's probation and imposed the underlying sentence, which it had reduced to 18 to 36 months.

Defendants also have the right to a speedy trial under the Sixth Amendment to the United States Constitution. The constitutional analysis is separate from the analysis we use to consider a speedy trial claim under Rule 48(b). See Castellanos v. State , 2016 WY 11, ¶¶ 49-51, 69, 366 P.3d 1279, 1294-95, 1299 (Wyo. 2016) ; Rhodes v. State , 2015 WY 60, ¶¶ 10, 17, 348 P.3d 404, 407-08, 410-11 (Wyo. 2015). Mr. Osban mentions his constitutional right to a speedy trial in his appellate brief but does not provide the relevant standard or an analysis of that standard. Therefore, we limit Mr. Osban's claim to Rule 48(b). See Sonnett v. First American Title Ins. Co. , 2013 WY 106, ¶ 26, 309 P.3d 799, 808 (Wyo. 2013) (quoting Elder v. Jones , 608 P.2d 654, 660 (Wyo. 1980) ) ("An appellant is required to present this court with relevant authority and cogent argument. It is not enough to identify a potential issue with the expectation that this court will flesh out the matter from there. The appellant, at a minimum, must attempt to relate the rule of law he depends upon to the facts of his case.").

The State does not argue that this statement amounted to a motion by defense counsel to continue the October 16, 2017 trial setting. Nor could it. To continue a trial based on the defendant's motion, that motion must be supported by an affidavit. W.R.Cr.P. 48(b)(4)(A).

Cf. Webb v. State , 2017 WY 108, ¶ 50, 401 P.3d 914, 929-30 (Wyo. 2017) (Fox, J. & Burke, C.J., concurring in part and dissenting in part) ("[T]he State's repeated circumvention of the speedy trial rule by dismissing and refiling [an Information] to start the [speedy trial] clock anew has the effect of eviscerating W.R.Cr.P. 48.") (footnote omitted).

On April 11, 2017, Mr. Osban's attorney filed a written demand for speedy trial. Under Rule 48(b)(7), a dismissal for violating Rule 48 precludes re-prosecution.

The circumstances here beg the question of how a single district judge can provide speedy trial to all criminal defendants, while also handling juvenile cases (which have a higher scheduling priority by law), domestic cases, and civil cases. The Court's weighted caseload statistics indicate that in FY2018 the First Judicial District needed 4.59 district judges to handle the number of cases in that district but had only three judges. In FY2018 (including the time frame relevant to this case), those three district judges were assigned 320 civil cases, 75 adoptions, 541 divorces, 747 other domestic relations cases, 284 juvenile cases, 36 appeals and 25 termination of parental rights cases in addition to 499 felony cases.