2001 WY 13

**Larry TAYLOR, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 99–196.

Supreme Court of Wyoming.

Jan. 12, 2001.

Rehearing Denied March 12, 2001.

Representing Appellant: Sylvia Lee Hackl, State Public Defender; Donna D. Domonkos, Appellate Counsel; Diane Courselle, Director, Kim Corey, Cynthia Salisbury and Kallie D. Woodward, Student Interns, of the Wyoming Defender Aid Program. Argument by Ms. Corey.

Representing Appellee: Gay Woodhouse, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General; Theodore E. Lauer, Director, Mackenzie Hunt, Benjie Wimmer and Patrick Moran, Student Interns, of the Prosecution Assistance Program. Argument by Mr. Hunt.

Before LEHMAN, C.J., and THOMAS,* GOLDEN, HILL, and KITE, JJ.

GOLDEN, Justice.

[¶ 1]   In this appeal, Appellant Larry Taylor appeals his conviction for receiving stolen property, alleging that a speedy trial violation under W.R.Cr.P. 48, a misleading jury instruction, and prosecutorial misconduct require reversing his conviction.  We affirm.

## ISSUES

[¶ 2]   Taylor presents these issues for our review:

1.  Was Mr. Larry Taylor denied his right to a speedy trial when the time between his arraignment and trial was 165 days; and was he denied effective assistance of counsel when his trial attorney failed to renew the motions previously filed by Mr. Taylor.

2.  Did jury instruction 7 mislead the jury and shift the burden of proof from the State to the Defendant since the jury instruction relieved the State of proving be-

* concurred prior to retirement

yond a reasonable doubt that Mr. Taylor knew the check was stolen.

3. Was jury prevented from impartially evaluating the evidence, and was Larry Taylor deprived of a fair trial, as a result of prosecutorial misconduct which included: improper cross-examination of Mr. Taylor wherein he was compelled to label a State's witness a liar; improper inquiry regarding the irrelevant issue of alleged methamphetamine use by Larry Taylor; inquiry into the details of a prior conviction which far exceeded the scope permitted by W.R.E. 609; and eliciting improper testimony from a police detective which invaded the Court's province of instructing the jury regarding the applicable law.

The State phrases the issues as:

I. Was Appellant denied his right to a speedy trial under Rule 48(b), Wyoming Rules of Criminal Procedure, or under the Constitutions of the United States or Wyoming; and was Appellant denied effective assistance of counsel because his attorney failed to renew Appellant's motions for a speedy trial?

II. Did jury instruction 7 mislead the jury, shift the burden of proof from the State to Appellant and relieve the State of proving beyond a reasonable doubt that Appellant knew the $7,000.00 check was stolen?

III. Was Appellant deprived of a fair trial due to alleged prosecutorial misconduct?

## FACTS

[¶ 3]  The Phipps Construction Company reported forged checks to its bank in May of 1998.  An investigation revealed that thieves saw a box of checks delivered to Mrs. Phipps'

home and had stolen them.  One of the checks was issued to Taylor for $7,000 and endorsed and deposited by him.  He later drew out $6,500 from his account.  Taylor admitted that he received one of the checks but told investigators that he had received it after selling a high performance engine to an individual who claimed to work for Phipps.  He denied that he knew it was stolen.  Taylor's home was searched, and he was arrested for receiving stolen property.  After being released on bond, Taylor attempted to retrieve some of his personal property that was being held for evidence.  When denied, Taylor became angry and told a police officer that he only got a few hundred dollars out of this deal.

[¶ 4]  Appellant was tried before a jury on February 1, 1999, for unlawfully and knowingly concealing, disposing, buying or receiving property he knew or had reasonable cause to believe was stolen and which had a value of $500 or more.[1]  He testified that his earlier story about receiving the stolen check was a lie, stated that he suspected the check might not clear the bank, and had the bank confirm that the check would clear before depositing it, but still denied knowing that the check was stolen.  At trial, he claimed that he had received the check for selling a white Camaro.  He later changed his mind about the sale and returned $6,500 along with $500.00 that he had in his back pocket to the purchaser.  He denied stating to the officer that he had only gotten a few hundred dollars out of the deal.  The jury convicted Taylor.

## DISCUSSION

### Speedy Trial

[¶ 5]  Taylor was arraigned on August 20, 1998, and tried on February 1, 1999,

---

1.  Wyo. Stat. Ann. § 6–3–403 (LEXIS 1999) provides:

**Wrongful taking or disposing of property; venue of indictment.**

(a) A person who buys, receives, conceals or disposes of property which he knows, believes or has reasonable cause to believe was obtained in violation of law is guilty of:

(i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is five hundred dollars ($500.00) or more; or

(ii) Repealed by Laws 1984, ch. 44, § 3.

(iii) A misdemeanor punishable by imprisonment for not more than six (6) months, a fine of not more than seven hundred fifty dollars ($750.00), or both, if the value of the property is less than five hundred dollars ($500.00).

(b) A person may be indicted under this section in the county where he received or possessed the property, notwithstanding the wrongful taking occurred in another county.

a difference of 165 days which he claims violates W.R.Cr.P. 48 and the federal and state constitutions.

We review a speedy trial claim to ensure that the mandates of W.R.Cr.P. 48 and constitutional guarantees have been met. *Yung v. State*, 906 P.2d 1028, 1032 (Wyo. 1995). We begin by calculating the time between defendant's arraignment and trial, excluding the time periods specified in W.R.Cr.P. 48(b)(3). *Hogan v. State*, 908 P.2d 925, 930 (Wyo.1995); *McDermott v. State*, 897 P.2d 1295, 1300 (Wyo.1995). Delays of fewer than 120 days are permissible. *Hogan*, 908 P.2d at 930; *McDermott*, 897 P.2d at 1300. If a delay has exceeded 120 days, we determine whether the defendant has made a written demand for a speedy trial or otherwise vigorously asserted his rights under W.R.Cr.P. 48. *Kleinschmidt v. State*, 913 P.2d 438, 439–40 (Wyo.1996); *Hall v. State*, 911 P.2d 1364, 1370 (Wyo.1996). If the defendant has not done so, [and the Rule does not provide relief] we apply the four-part constitutional test articulated in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972), and adopted in *Cosco v. State*, 503 P.2d 1403, 1405 (Wyo.1972), *cert. denied*, 411 U.S. 971, 93 S.Ct. 2164, 36 L.Ed.2d 693 (1973), to ensure that the defendant's constitutional guarantee to a speedy trial has been satisfied.

*Detheridge v. State*, 963 P.2d 233, 235 (Wyo. 1998).

[¶ 6] For constitutional analysis, the speedy trial clock begins ticking upon arrest. *Campbell v. State*, 999 P.2d 649, 655 (Wyo.2000). Taylor was arrested on June 11, 1998, and tried on February 1, 1999, a difference of 236 days. Taylor does not present any constitutional arguments apparently because this time period is not presumptively prejudicial or significantly long and would not be found to violate his constitutional rights absent a showing of prejudice. *McDaniel v. State*, 945 P.2d 1186, 1188 (Wyo. 1997). Taylor presents no showing of prejudice. *Osborne v. State*, 806 P.2d 272, 277 (Wyo.1991) (holding 244 days is not presump-tively prejudicial, but requiring further analysis).

[¶ 7] Taylor does argue that a violation of W.R.Cr.P. 48 requires dismissal. He twice asserted his speedy trial rights on his own motion to the district court but did not receive a ruling until a hearing on January 27, 1999, when his new attorney argued the motions and dismissal was denied. The record also shows, however, that the motions were filed after the defense and the State stipulated to a continuance for further plea negotiations, and after Taylor had requested different appointed counsel. After the continuance was granted, counsel withdrew, and new counsel was appointed. Taylor contends that the change in counsel did not cause any delay and that any delay caused by the stipulation cannot be attributed to him because the continuance was not granted in accordance with W.R.Cr.P. 48(b).

*W.R.Cr.P. 48(b)*

[¶ 8] A criminal defendant's right to a speedy trial is grounded in the constitutions of the United States and the State of Wyoming. In recognition that W.R.Cr.P. 48 provides criminal defendants a procedural mechanism to ensure the protection of this constitutional right, we have held that compliance with its terms is mandatory. *Detheridge*, 963 P.2d at 235. In pertinent part, W.R.Cr.P. 48 provides:

(b) *Speedy trial.*—

(1) It is the responsibility of the court, counsel and the defendant to insure that the defendant is timely tried.

(2) A criminal charge shall be brought to trial within 120 days following arraignment unless continued as provided in this rule.

(3) The following periods shall be excluded in computing the time for trial:

(A) All proceedings related to the mental illness or deficiency of the defendant;

(B) Proceedings on another charge;

(C) Delay granted by the court pursuant to paragraph (4) or (5);

(D) The time between the dismissal and the refiling of the same charge; and

(E) Delay occasioned by defendant's change of counsel or application therefor.

(4) Continuances not to exceed six months from the date of arraignment may be granted by the trial court as follows:

(A) On motion of defendant supported by affidavit; or

(B) On motion of the attorney for the state or the court if:

(i) The defendant expressly consents;

(ii) The state's evidence is unavailable and the prosecution has exercised due diligence; or

(iii) Required in the due administration of justice and the defendant will not be substantially prejudiced; and

(C) If a continuance is proposed by the state or the court, the defendant shall be notified. If the defendant objects, the defendant must show in writing how the delay may prejudice the defense.

(5) Any request to continue a trial to a date more than six months from the date of arraignment must be directed to the court to which appeals from the trial would be taken and may be granted by that court in accordance with paragraph (4).

(6) Any criminal case not tried or continued as provided in this rule shall be dismissed 120 days after arraignment.

(7) If the defendant is unavailable for any proceeding at which the defendant's presence is required, the case may be continued for a reasonable time by the trial court but for no more than 120 days after the defendant is available or the case further continued as provided in this rule.

(8) A dismissal for lack of a speedy trial under this rule shall not bar the state from again prosecuting the defendant for the same offense unless the defendant made a written demand for a speedy trial or can demonstrate prejudice from the delay.

*Excludable Delay*

[¶ 9] Taylor claims that the record does not show that the stipulated continuance was supported by his affidavit or with his express consent and the rule does not allow the delay to be excluded from time calculations. The motion submitted to the court indicated that the parties had stipulated to and were jointly requesting a continuance for the purpose of further discussing a plea agreement. Under these circumstances, unless the defendant provides evidence that the stipulation was over his objections, the delay is excludable but not attributable to the defendant. Such a motion falls under W.R.Cr.P. 48(b)(4)(B)(iii) for "due administration." Obviously a stipulated continuance to pursue plea negotiations is to the benefit of the defendant and does not result in prejudice to him. The stipulation was entered into on October 30, 1998. His trial date changed from November 2 to November 30, 1998, a difference of 28 days. Excluding this time period, the time between arraignment and trial was 137 days.

[¶ 10] The record also shows that new counsel was appointed on November 6, 1998, and the trial remained scheduled for November 30, still under the 120–day time limit. Taylor's trial was eleventh in the stack and did not take place on November 30. Nothing in the record tells us the reason why trial did not take place. On December 4, 1998, Taylor made another handwritten motion to the court for speedy trial. On December 7, 1998, a new schedule was released setting his trial for January 4, 1999, a period still within the 120–day time limit because of the excludable delay. His trial was sixth in the stack. On December 21, the record shows a motion to revoke and forfeit bond. Its stated grounds were that since his release on bond, Taylor had been arrested and convicted of two separate assault and batteries under the Family Violence Protection Act. A bench warrant issued for his arrest on that same day.

[¶ 11] On December 31, 1998, a new trial schedule issued from the court scheduling Taylor's trial for February 1, 1999. Although fifth in the stack, trial did occur on that date. On January 22, 1999, his new attorney filed two motions and argued them along with Taylor's last speedy trial motion before the trial court on January 27, 1999. At that hearing, the prosecutor argued that the delay was "in the due administration of justice because of the stack system." The

trial court denied the motion to dismiss on speedy trial violation grounds without comment.

[¶ 12] In this appeal, the State contends that delay due to a crowded docket is excludable for the due administration of justice as provided by W.R.Cr.P. 48(b)(4)(B)(iii). The time period at issue is 137 days. Both parties rely upon *Germany v. State*, 999 P.2d 63 (Wyo.2000); however, Taylor correctly points out that delay caused by a crowded docket using a stack system was excluded in that case for reasons not present in his case. As *Germany* decided, both the Court and the State made the efforts required by W.R.Cr.P. 48(b) to notify Germany that its crowded docket required a continuance, and he had the opportunity to object and show prejudice. *Id.* at 66–67. Taylor asserts that did not happen in this case, and our review reveals nothing in the record to contradict his assertion. W.R.Cr.P. 48(b)(4)(B)(iii) plainly requires that the court grant a continuance to extend for the "due administration of justice," and that did not occur.

[¶ 13] Our review of the record does not indicate that the seventeen-day delay was caused by a crowded docket or deliberate maneuvering by the State. The record does show that, between his arraignment and trial, the defendant was arrested on other charges, and criminal proceedings ensued against him, necessitating a change in counsel. Although the burden for bringing the defendant to trial in a timely manner rests with the State, *Estrada v. State*, 611 P.2d 850, 854 (Wyo. 1980), the rule does not require a court-ordered continuance before excluding delay attributable to either a change in counsel or proceedings against the defendant on other charges. W.R.Cr.P. 48(b)(3)(B); W.R.Cr.P. 48(b)(3)(E). We find that the delay was attributable to these actions of defendant, and when that is the case, no speedy trial violation will be found to have occurred. *See Dean v. State*, 865 P.2d 601, 614 (Wyo.1993), *superseded on other grounds by Vigil v. State*, 926 P.2d 351 (Wyo.1996).

### Jury Instruction

[¶ 14] Taylor contends that the following instruction contradicts itself and is misleading and confusing:

Instruction No. 7

YOU ARE INSTRUCTED THAT possession of recently stolen property is not of itself sufficient to permit a finding that the Defendant is guilty of the crime charged. However, possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which the Jury may reasonably draw the inference and find, in light of surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen.

Although possession is a strong circumstance tending to show guilt, there must be corroborative evidence tending to prove the Defendant's guilt. However, this corroborative evidence need only be slight. As corroboration, you may consider whether the Defendant had the opportunity to commit the crime charged, his conduct, his false or contradicting statements, if any, or other statements he may have made with reference to the property and other evidence which tends to connect him with the crime.

If you find beyond a reasonable doubt from the evidence that the property was stolen, and that, while recently stolen, the property was in the possession of the Defendant, you may, from those facts, draw the inference that the property was possessed by the Defendant with the knowledge that it was stolen.

[¶ 15] We have previously approved a similar instruction in *Harley v. State*, 737 P.2d 750, 753 (Wyo.1987). Taylor contends, however, that the instruction given in his case has omitted critical language in the last paragraph: "unless such possession by the Defendant is explained to the satisfaction of the Jury by other facts and circumstances in evidence of the case." *Id.* Taylor contends that excluding this statement violates *Russell v. State*, 583 P.2d 690, 698 (Wyo.1978), where we held that naked possession of stolen property alone is insufficient to prove knowledge, and the instruction confused and misled the jury as to the State's burden of proving both

possession and the corroborative facts. The State contends that no error occurred because the jury was instructed in another jury instruction to find that all of the elements of the crime were proved beyond a reasonable doubt. Instruction seven, however, was the only instruction given on the necessity of corroborative facts before the element of knowledge could be deemed proved beyond a reasonable doubt.

[¶ 16] No objection was lodged against the jury instruction at trial, and plain error analysis applies. *Miller v. State*, 904 P.2d 344, 347 (Wyo.1995). To demonstrate plain error, Taylor must show that the record clearly shows an error that transgressed a clear and unequivocal rule of law which adversely affected a substantial right. *Id.* at 348. A confusing or misleading jury instruction is always a fundamental error. *Id.* We have said that jury instructions should inform the jury about the applicable law so that the jury may apply that law to its own findings with respect to the material facts. *Compton v. State*, 931 P.2d 936, 939 (Wyo. 1997). Jury instructions are to be written with the particular facts and theories of each case in mind and may differ from case to case because any one of several instructions may be legally correct. *Id.* at 939–40. A failure to give any instruction on an essential element of a criminal offense is fundamental error, as is a confusing or misleading instruction, requiring reversal of the defendant's conviction. *Id.* at 940. The test whether the jury has been instructed on the necessary elements of the crime charged is whether the instruction leaves no doubt as to under what circumstances the crime can be found to have been committed. *Id.*

[¶ 17] Instruction seven is a much abbreviated version of an instruction approved in *Barnes v. United States*, 412 U.S. 837, 840 n. 3, 93 S.Ct. 2357, 2360, 37 L.Ed.2d 380 (1973), and adopted in *Russell*. *Vanvorst v. State*, 1 P.3d 1223, 1231, (Wyo.2000).[2] *Vanvorst* also considered the contention that the jury was not properly instructed as to its responsibility to find "corroborative evidence." That decision determined that a paragraph which included the sentence omitted here was substantially identical to the instruction approved in *Barnes* and *Russell* and found no error because the jury was well informed about its duty to find "corroborative evidence." *Id.*

[¶ 18] Jury instructions, however, are to be reviewed in their entirety and read together. *Id.* (citing *Ostrowski v. State*, 665 P.2d 471, 487 (Wyo.1983)). In this case, other instructions informed the jury of the elements that the State had to prove, discussed the defense theory of factual mistake, and

2. The *Vanvorst* instruction stated, in pertinent part:

Possession of recently stolen property is not of itself sufficient to permit a finding that the Defendant is guilty of the crime charged. However, possession of recently stolen property, if not satisfactorily explained, is ordinarily a circumstance from which the Jury may reasonably draw the inference and find, in the light of surrounding circumstances shown by the evidence in the case, that the person in possession knew the property had been stolen, and, is also a circumstance from which the jury may reasonably draw the inference that the person in possession not only knew it was stolen property but also participated in some way in the theft of the property.

However, you are never required to make this inference. It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence in this case warrant any inference which the law permits the jury to draw from the possession of stolen property. [*This second paragraph was not included in the instruction to Taylor's jury.*]

Although possession is a strong circumstance tending to show guilt, there must be corroborative evidence tending to prove Defendant's guilt. However this corroborative evidence need only be slight and may include: Whether the Defendant had the opportunity to commit the crime charged, his conduct, his false or contradicting statements, if any, or other statements he may have made with reference to the property and any other evidence which tends to connect him with the crime.

If you find beyond a reasonable doubt from the evidence that the property was stolen, and that, while recently stolen, the property was in the possession of the Defendant, you may, from those facts, draw the inference that the property was possessed by the Defendant with knowledge that it was stolen unless such possession by the Defendant is explained to the satisfaction of the Jury by other facts and circumstances in evidence of the case.

*Vanvorst*, 1 P.3d at 1230.

defined circumstantial evidence. Although we cannot say that the jury was "well informed about its duty to find corroborative evidence," Taylor has not met the stringent plain error burden showing that the jury was misled to believe that it could convict for mere possession. We recommend, however, that this jury instruction not be given in the future, and that the *Vanvorst* and *Russell* instructions be used as applicable.

### Prosecutorial Misconduct

[¶ 19] In his final issue, Taylor contends that the prosecutor engaged in prejudicial misconduct in a number of instances and the cumulative prejudicial effect denied him a fair trial. We must examine the entire record to determine whether the conduct asserted as prosecutorial misconduct resulted in substantial prejudice to the defendant amounting to the denial of a fair trial. *Lindsey v. State*, 725 P.2d 649, 656 (Wyo. 1986). When the defendant asserts prosecutorial misconduct, the burden of establishing prejudice is assigned to him. *Capshaw v. State*, 714 P.2d 349, 352 (Wyo.1986).

#### Cross–Examination of Defendant

[¶ 20] Taylor contends plain error occurred when the trial court allowed the prosecutor to improperly ask him questions requiring him to state that a police officer was lying and the prosecutor argued in closing that Taylor, not the officer, was lying. Taylor asserts that this Court's prohibition on witness credibility vouching is consistent with the rule espoused in *United States v. Richter*, 826 F.2d 206 (2nd Cir.1987). *Richter* stated that "[d]eterminations of credibility are for the jury, not for witnesses, [and therefore] [p]rosecutorial cross-examination which compels a defendant to state that law enforcement officers lied in their testimony is improper." *Id.* at 208 (citations omitted). Under a plain error analysis, *Richter* considered questions eliciting defendant testimony that government agents were lying, calling a rebuttal witness to highlight discrepancies between the testimony of government agents and the defendant, and prosecutorial arguments about that testimony. Prejudicial error was found when the improper questions were followed by prosecutorial statements to the jury that if the defendant is innocent, then government agents must be lying and committing perjury. *Id.* at 209. Several federal decisions have limited *Richter* to its particular, egregious facts. *United States v. Williamson*, 53 F.3d 1500, 1522–23 (10th Cir. 1995), *cert. denied*, 516 U.S. 882, 116 S.Ct. 218, 133 L.Ed.2d 149 (1995). *Williamson* did not adopt *Richter's* principle, distinguishing between prosecutorial misconduct resulting in an unfair trial and "confrontational and abrasive" prosecutorial conduct that does not constitute plain error. *Id.* at 1523.

[¶ 21] Taylor correctly points to decisions where we have condemned eliciting opinion testimony. *Bennett v. State*, 794 P.2d 879, 882–83 (Wyo.1990); *Stephens v. State*, 774 P.2d 60, 66–67 (Wyo.1989). We presume prejudice when the prosecutor elicits an express opinion as to the guilt of the defendant, and, when not objected to at trial, require the defendant to prove prejudicial error when challenging other comments vouching for the veracity of a witness. *Dudley v. State*, 951 P.2d 1176, 1178–79 (Wyo. 1998). Taylor's issue differs from issues presented by opinions of guilt and vouching, and asks whether a trial court commits error by allowing a prosecutor to elicit a witness's opinion on the truthfulness or veracity of another witness. We have previously considered whether a prosecutor improperly elicited opinion testimony when a prosecutor asked a witness whether certain defendant testimony would be a lie. *Huff v. State*, 992 P.2d 1071, 1078–79 (Wyo.1999). *Huff* determined that the prosecutor's unskillfully phrased question was seeking testimony about the condition of a motel room and not improper opinion testimony. *Id.* at 1079. Here, the situation is reversed, and plainly the prosecutor was seeking improper opinion testimony from Taylor. Taylor argues that the questions and closing argument were prejudicial; however, our standard requires he show that

> [e]ven though error is found, it still is necessary, in most instances, to determine whether the error was prejudicial. Unless the situation reaches the level of error per se, or is perceived to be constitutional er-

ror, error is prejudicial only if the defendant can establish a reasonable possibility that, in the absence of the error, the verdict might have been more favorable.

*Vanvorst,* 1 P.3d at 1235 (quoting *Stephens,* 774 P.2d at 67). The prosecutor argued to the jury that the officer had no motive to lie, and did not argue to the jury that finding Taylor innocent meant the officer is lying or committing perjury. Absent these facts, we will not find that there is any reasonable possibility that the verdict might have been more favorable to Taylor. Although this error does not rise to the level of plain error, we include it in our consideration of Taylor's claim that several harmless errors resulted in prejudice requiring reversal.

▇▇▇ [¶ 22] Taylor moved for mistrial after the prosecutor improperly inquired into whether Taylor needed money to buy methamphetamine. He objected, the trial court sustained, and upon his request the court instructed the jury. Taylor moved for a mistrial, and although the court found that the probative value was outweighed by the prejudice, it determined its instruction was sufficient. Defense counsel was told that it could request additional jury instructions on the issue, but did not do so. Taylor also complains that the prosecutor improperly inquired about a prior burglary conviction by pursuing excessive detail in violation of W.R.E. 609. Specifically, the prosecutor asked the defendant whether he had defended himself in that burglary by claiming he was seen "but you told them that you'd just gone inside because you were curious." The State contends that by showing that the defendant was again using a defense of "in the wrong place at the wrong time," the prosecutor was asking about prior misconduct pursuant to W.R.E. 404(b) to show modus operandi or plan. The evidence cannot be defined as showing "modus operandi or plan," and the State's assertion is not further considered. In Wyoming, under W.R.E. 609 a testifying defendant is required only to answer whether he has been previously convicted of a felony, what the felony was, and when he was convicted. *Ramirez v. State,* 994 P.2d 970, 973 (Wyo.2000). The prosecutor's question requesting details about the prior conviction was error. After Taylor objected, the court directed the prosecution to cease questioning.

[¶ 23] Finally, Taylor complains that the prosecutor asked a police officer whether "larceny of a check," forgery, and passing or possessing a forged document were crimes in Wyoming. He objected to the prosecutor's misstatement of the law, and, now on appeal, contends that by improperly invading the court's province to instruct on the law and implying that Taylor was guilty of something, the prosecutor's improper inquiry is part of a pattern of misconduct evidenced by this series of improper inquiries just discussed. Taylor contends that this pattern of misconduct prejudiced him in a case where the evidence against him was far from overwhelming.

### Prejudicial Error

▇▇▇ [¶ 24] We find, however, that the evidence against Taylor was overwhelming. The record shows that Taylor took the check although he suspected that it was forged, deposited it for $7,000.00 and returned $6,500.00 to the thief, made admissions to investigators that he only made "a few hundred dollars from the deal," from which the jury was entitled to infer that he knowingly received stolen property for profit, and told two different but unlikely stories to explain his possession of a stolen check and the $500 difference. Additionally, although Taylor testified that the officer misunderstood his incriminating statement, the jury was entitled to find the officer's testimony credible and the defendant's incredible. Although the prosecutor asked improper questions, we find the errors were not prejudicial.

[¶ 25] We affirm Taylor's conviction.