2007 WY 83

**Kenneth POTTER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**Nos. 06–59, 06–60.**

Supreme Court of Wyoming.

May 18, 2007.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel; and Ryan R. Roden, Senior Assistant Appellate Counsel. Argument by Mr. Roden.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Cathleen D. Parker, Senior Assistant Attorney General. Argument by Ms. Parker.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

HILL, Justice.

[¶1]   Pursuant to a plea agreement, Appellant, Kenneth Potter (Potter), conditionally pleaded guilty to one count of felonious restraint in violation of Wyo. Stat. Ann. § 6–2–202(a) (LexisNexis 2005).  After timely appealing both the Judgment and Sentence and the order revoking his probation, the matters were consolidated.  The single issue on appeal is whether Potter was denied his right to a speedy trial.

[¶2]   We affirm.

## ISSUE

[¶ 3]   Potter states the single issue as follows:

Whether, even though some of the delay in bringing [Potter] to trial pertained to his competency, [Potter] was denied his right to a speedy trial; and therefore, the charges against [him] should have been dismissed with prejudice due to violation of W.R.Cr.P. 48 and [Potter's] Constitutional right to a speedy trial.

[¶ 4]   The State phrases the issue more simply:

Was [Potter] denied his right to a speedy trial?

## FACTS

[¶ 5]   This case has a prolonged history, and one that is laden with dates.   On September 26, 2004, after an altercation with his mother, Potter was arrested.   The case was bound over to district court, where the information was formally filed on October 6, 2004, charging Potter with three counts: attempted murder, battery of a household member, and interference with an emergency call.   He was arraigned in district court on October 21, 2004, and pleaded not guilty by reason of mental illness or deficiency.   He also claimed that he was not competent to proceed to trial and asked the court to order a mental evaluation.

[¶ 6]   On October 25, 2004, the district court filed its *Order for Evaluation and Suspending Proceedings.*   The order required an evaluation of Potter at the Wyoming State Hospital and the completion of a written report.   Potter filed a *Demand for Speedy Trial* on November 10, 2004.

[¶ 7]   After a new public defender entered her appearance in the case on Potter's behalf, he again asserted his right to speedy trial by filing another written demand on November 23, 2004.   Also on that day, he filed a *Motion Withdrawing Request for Evaluation and Suspension of Proceedings,* moving the district court to withdraw his request for evaluation and suspension of the

proceedings, and set the case for rearraignment.   Accordingly, the district court set a hearing on the motion for December 9, 2004. During the December 9, 2004 hearing, Potter asked the district court for permission to withdraw his request for an evaluation.[1]   The district court ordered the parties to brief whether or not to allow Potter to withdraw his plea of not guilty by reason of mental illness and change his plea to not guilty.

[¶ 8]   Each party filed the requested briefing.   In the State's brief, it asked the court to set the matter for a competency hearing. In his brief, Potter agreed with the State that "it would be appropriate for the Court to have a hearing to offer the Defendant the opportunity to demonstrate by a preponderance of the evidence that he is competent to proceed."   Potter further requested that the hearing be set after January 4, 2005, so that he might have time to prepare.   Concurrent with filing his brief, Potter also filed a *Motion to Withdraw Plea of Not Guilty by Reason of Mental Illness and Not Competent to Proceed and Enter Plea of Not Guilty.*

[¶ 9]   At the January 6, 2005 hearing on the party's aforementioned briefs, the issue was Potter's competency.   He insisted that he was indeed competent, and introduced testimony in support of his position.   The State did not object to Potter withdrawing his "not guilty by reason of mental illness" plea, and further stated that it did not object to his motion.   At the conclusion of the hearing, the district court found Potter competent to proceed to trial.   However, there remained the issue as to whether or not he intended to introduce evidence of his competence at trial.   As such, the issue of his mental status remained a matter of concern, and the district court set a *Motion in Limine* hearing for January 20, 2005.   The hearing was postponed, however, because the court was notified that "extra security" was needed for Mr. Potter.

[¶ 10]   Another delay occurred when, on February 25, 2005, the case was reassigned

---

1.   At the time of the hearing, the Wyoming State Hospital had conducted an examination of Potter, but had not yet completed or filed a report.

to a different judge. Subsequently, the district court entered an order setting the trial for April 4, 2005. However, on March 28, 2005, the State filed a *Motion to Suspend Proceedings, for Production Evaluation, and Motion to Reconsider Issue of Withdrawal of Not Guilty by Reason of Mental Illness Plea.* Potter objected to the motion, and as a result of these filings, on March 30, 2005, the district court ordered the proceedings suspended and ordered the Wyoming State Hospital to produce a mental evaluation of Potter.

[¶ 11] The evaluation was filed in district court on June 1, 2005. The report concluded that Potter was competent to proceed, and on June 7, 2005, the district court allowed him to change his plea from "not guilty by reason of mental illness or deficiency" to "not guilty." Subsequently, the district court set the matter for trial on July 11, 2005. However, the trial was reset for September 26, 2005.[2]

[¶ 12] Five days before his trial was set to begin, Potter filed a *Motion to Dismiss Charges With Prejudice for Violation of Defendant's Right to Speedy Trial.* Also prior to the trial date, a change of plea hearing was held on September 23, 2005. Potter conditionally pleaded "no contest" to a single count of felonious restraint in violation of § 6–2–202(a).[3] He was then released on his own recognizance. On December 6, 2005, he was sentenced, and was also heard on his motion to dismiss. The district court denied the motion, holding that Potter's right to speedy trial had not been violated. He was sentenced to not less than four years, nor more than five years, in prison. The sentence was suspended, and he was placed on probation for four years. The judgment and sentence was filed on February 7, 2006.

[¶ 13] Two weeks after he was sentenced, Potter violated the terms of his probation and, as a consequence, that probation was revoked. He was ordered to the Wyoming State Penitentiary for three years and nine months, to five years, with credit for time served of 421 days. Potter appealed both his judgment and sentence, and the order revoking his probation.

## STANDARD OF REVIEW

[¶ 14] We review speedy trial claims to ensure that the mandates of W.R.Cr.P. 48 and constitutional guarantees have been met. *Taylor v. State,* 2001 WY 13, ¶ 5, 17 P.3d 715, 718 (Wyo.2001). We examine *de novo* the constitutional question of whether a defendant has been denied a speedy trial in violation of the Sixth Amendment. *Walters v. State,* 2004 WY 37 ¶ 9, 87 P.3d 793, 795 (Wyo.2004).

## ARGUMENT

*Speedy Trial*

[¶ 15] Potter asserts that his right to a speedy trial was violated under W.R.Cr.P. 48(b) and under the Sixth Amendment to the United States Constitution and art. 1, § 10 of the Wyoming Constitution, claiming that even though some of the delay can be attributed to issues of his competency, most of the delay can be attributed to the State and the district court. Accordingly, Potter maintains that the charges against him should be dismissed.

[¶ 16] The State responds that no violation of Potter's right to a speedy trial occurred under either Rule 48 or the Constitution. Addressing Rule 48, the State contends that the delay from October 21, 2004, to June 7, 2005, can be attributed solely to the issue of Potter's competency, which excuses the 230–day delay. As to his constitutional claim, the State contends that under the four-factor constitutional analysis, the delay was not unreasonable, and he was not denied his right to a speedy trial. We find no violation of either Potter's statutory or constitutional right to a speedy trial, and affirm.

---

**2.** The record does not indicate why the trial was not held on July 11, 2005. However, the record does show that the present case was stacked third on July 11. Neither party requested a continuance, nor does there appear to be an objection to the new setting by either party.

**3.** Potter pleaded to this charge in accordance with an amended information which was filed September 23, 2005, the same day as his change of plea.

*A. W.R.Cr.P. 48*

[¶ 17] Potter contends that under Rule 48 he was denied his right to a speedy trial by a measure of, at the most, 293 days, and at the least, 196 days. Additionally, he argues that the delay in bringing the case to a close was due in large part to the State and the district court.

[¶ 18] In contrast, the State argues that Potter's right to speedy trial was not denied under Rule 48, and the reason for delay was attributable to him and questions surrounding his mental condition, not the State or the district court.

[¶ 19] W.R.Cr.P. 48 provides as follows:

**Rule 48. Dismissal; speedy trial.**

. . . .

(b) *Speedy trial.*—

(1) It is the responsibility of the court, counsel and the defendant to insure that the defendant is timely tried.

(2) A criminal charge shall be brought to trial within 180 days following arraignment unless continued as provided in this rule.

(3) The following periods shall be excluded in computing the time for trial:

(A) All proceedings related to the mental illness or deficiency of the defendant;

(B) Proceedings on another charge;

(C) The time between the dismissal and the refiling of the same charge; and

(D) Delay occasioned by defendant's change of counsel or application therefor.

(4) Continuances exceeding 180 days from the date of arraignment may be granted by the trial court as follows:

(A) On motion of defendant supported by affidavit; or

(B) On motion of the attorney for the state or the court if:

(i) The defendant expressly consents;

(ii) The state's evidence is unavailable and the prosecution has exercised due diligence; or

(iii) Required in the due administration of justice and the defendant will not be substantially prejudiced; and

(C) If a continuance is proposed by the state or the court, the defendant shall be notified. If the defendant objects, the defendant must show in writing

how the delay may prejudice the defense.

(5) Any criminal case not tried or continued as provided in this rule shall be dismissed 180 days after arraignment.

(6) If the defendant is unavailable for any proceeding at which the defendant's presence is required, the case may be continued for a reasonable time by the trial court but for no more than 180 days after the defendant is available or the case further continued as provided in this rule.

(7) A dismissal for lack of a speedy trial under this rule shall not bar the state from again prosecuting the defendant for the same offense unless the defendant made a written demand for a speedy trial or can demonstrate prejudice from the delay.

[¶ 20] In addition to the provisions made in Rule 48(b) to protect a defendant's competency, there are further statutory safeguards that provide an added layer of protection for criminal defendants. Wyo. Stat. Ann. § 7–11–303 (LexisNexis 2005) provides as follows:

§ 7–11–303. **Examination of accused to determine fitness to proceed; reports; commitment; defenses and objections.**

(a) If it appears at any stage of a criminal proceeding, by motion or upon the court's own motion that there is reasonable cause to believe that the accused has a mental illness or deficiency making him unfit to proceed, all further proceedings shall be suspended.

(b) The court shall order an examination of the accused by a designated examiner. . . .

(c) Written reports of the pretrial examination shall be filed with the clerk of court.

Also, Wyo. Stat. Ann. § 7–11–304(d) (LexisNexis 2005) mandates that "in all cases where a plea of 'not guilty by reason of mental illness or deficiency' is made, the judge shall order the defendant examined as provided in W.S. § 7–11–303(b)." The fail-

ure to complete an adequate mental examination and report is reversible error when a defendant has pleaded not guilty by reason of mental illness. *Engle v. State*, 774 P.2d 1303, 1312 (Wyo.1989). It is also reversible error for a court to fail to conduct a competency hearing when the court is faced with doubt as to a defendant's competency. *deShazer v. State*, 2003 WY 98, 74 P.3d 1240 (Wyo.2003). Furthermore, this Court has placed an obligation on both courts *and* the prosecution to seek an evaluation when there is evidence of incompetency:

> (a) The court has a continuing obligation, separate and apart from that of counsel for each of the parties, to raise the issue of competence to stand trial at any time the court has a good faith doubt as to the defendant's competence, and may raise the issue at any stage of the proceedings on its own motion.
>
> (b) The prosecutor should move for evaluation of defendant's competence to stand trial whenever the prosecutor has a good faith doubt as to the defendant's competence.

*deShazer*, ¶ 20, 74 P.3d at 1248 (citing ABA Criminal Justice Mental Health Standard 7–4.2 (1989)).

[¶ 21] We begin our analysis by calculating the time between a defendant's arraignment and conditional plea, excluding the allowed-for time periods specified in W.R.Cr.P. 48(b). *Taylor*, ¶ 5, 17 P.3d at 717–18. Delays of fewer than 180 days are permissible, and if a delay has exceeded 180 days, we determine whether or not the defendant has made a written demand for a speedy trial or otherwise vigorously asserted his rights under W.R.Cr.P 48. *Id.*

[¶ 22] By our calculations, there were a total of 337 days that elapsed from the date of Potter's arraignment, October 21, 2004, to the time of his conditional plea on September 23, 2005.[4] Potter contends that without taking into account any excludable time periods, the "clock runs out" on April 18, 2005, well before he entered his conditional plea. However, as the State points out, all of the delay from October 21, 2004, through June 7, 2005, can be attributed to proceedings related to Potter's mental illness or deficiency. In other words, 230 days of the 337 days of total delay can be attributed to proceedings related to Potter's mental illness or deficiency, leaving only 107 days of delay, which is well below the 180–day limit set forth by Rule 48. We will discuss specific time periods as they relate to the delay.

[¶ 23] Starting at the beginning, on October 21, 2004, Potter pleaded not guilty by reason of mental illness or deficiency and "not competent to stand [trial] at this time." Up until December 9, 2005, the issue of his mental competence had not yet been resolved and, at the hearing held on that date, the question was not resolved. As we referenced above, by statute, the district court was required to mandate that Potter be examined by a mental health professional who would then file a report. However, no report was filed, nor was there an answer as to whether or not he was competent to make the decision to change his plea. In light of those circumstances, the district court could not, and did not, accept a change of plea, and ultimately, ignored the requirement of a mental examination. *E.g., Hauck v. State*, 2001 WY 119, ¶ 14, 36 P.3d 597, 601 (Wyo. 2001) ("It is the district court's responsibility to determine competency.")

[¶ 24] After December 9, the question of Potter's competency remained unanswered, and the district court asked the parties to brief the question of whether or not to allow him to withdraw his plea of not guilty by reason of mental illness and change his plea to not guilty. Each party filed the requested briefing, and agreed that a hearing was in order. Specifically, the State asked the court to set the matter for hearing, a position with which Potter agreed, and requested the court to "set a hearing for the purpose of [determining competency]."

[¶ 25] At the hearing, the State expressly said that it did not object to Potter's withdrawal of his not guilty by reason of mental

---

4. In *Almada v. State*, 994 P.2d 299, 304 (Wyo. 1999), this Court held that the speedy trial clock stops ticking at the change of plea hearing when the court accepts the defendant's conditional guilty plea. *See also Sisneros v. State*, 2005 WY 139, ¶ 19, 121 P.3d 790, 797 (Wyo.2005).

illness plea. A psychologist testified that it was his opinion that Potter was competent to proceed at that time. The district court agreed with the psychologist, and declared Potter competent. Up until, and at the hearing held on January 6, the issue of competency was paramount and tolled the speedy trial clock.

[¶ 26] This brings us to January 7, 2005. Potter claims that the "speedy trial clock" began to run again on this date because of the competence finding at the January 6, 2005, hearing. This claim is in error, however, because although Potter was declared competent to proceed, he still apparently planned to introduce evidence concerning his mental state at trial. In fact, the district court scheduled a hearing on January 20, 2005, to address that plan, as Potter was unable to answer the district court's questions at the January 6 hearing:

> THE COURT: That means at trial he won't be able to talk about his mental illness.
>
> DEFENSE COUNSEL: Well, he certainly—I'm not sure that's what the law is. I believe—I haven't thought that through. I don't plan to use it, but just for purposes of argument, I think he does not rise—he certainly has a mental illness, and we're not denying that. That's been found, diagnosed, and that's been for years. What we're saying is that he does not have any type of psychotic episode such that he would be found not guilty by reason of mental illness. In this case, therefore, he does not wish to pursue that. I think he's competent to make that decision. Now, if it comes up that he's—
>
> THE COURT: I don't want to interrupt you, but this is a real simple question. The State has I think made its position very clear. I'm really talking about an order in limine at trial. Maybe what you need to do is talk about it, think about it; and we can come back next week. I suppose the State can file a formal motion in limine on that very issue. Then we can

make a formal record of that. That's probably the better way of doing that.

> DEFENSE COUNSEL: I would be more comfortable with that. Thank you.

Clearly, at this instant, Potter's predicament stemmed from the fact that evidence of mental illness is not admissible to show lack of responsibility for criminal conduct, unless a defendant pleads not guilty by reason of mental illness or deficiency. *See* § 7–11–304(c). Therefore, this Court is comfortable in concluding that Potter's mental state, as it related to the crimes charged, was still an issue the district court had to address. Thus, the delay was excludable.

[¶ 27] A hearing was set for January 20, 2005, specifically for the purposes of addressing the court's concerns. The hearing was not held on that day, however, because the district court was notified that "extra security" was needed for Mr. Potter. Thus, as of January 20, 2005, the district court had not yet accepted a change of plea, had not received an examination report of Potter's mental status, had knowledge that he was suffering from a mental illness, and had additional concerns of his overall competency. Additionally, the exclusion provided by W.R.Cr.P. 48(b)(3)(A) from the 180–day rule was still in effect, bringing the total excludable time up to 91 days.

[¶ 28] The next time period we must consider is from January 21, 2005, to March 27, 2005—a total of 66 days. During that time, Potter filed a *Request for Setting* for an arraignment, which was set for March 3, 2005. The case was assigned to a new judge on February 25, 2005. Also, the State filed various motions in preparation for trial. However, the examination report, which was required under § 7–11–303(c), had not yet been filed with the court, and the Court had not yet addressed Potter's change of plea.[5] Little else happened during this time, but, for the sole reason that the issue of Potter's competence had not yet been resolved, this time period is excludable.

---

5. As to these two issues, the record is not crystal clear. However, there is indication that, as to the examination report, defense counsel had requested it not be provided to the court due to Potter's desire to change his plea. Furthermore, as to the court not addressing his request to change his plea, there is some indication in the record that there were safety issues with Potter, as he had experienced a psychotic episode while in custody.

[¶ 29] We next turn to March 28, 2005, when the State filed its *Motion to Suspend Proceedings, for Production of Evaluation, and Motion to Reconsider Issue of Withdrawal of Not Guilty by Reason of Mental Illness Plea,* to which Potter objected. The motion was granted.

[¶ 30] On appeal, Potter argues that the court should not have granted the motion because it could not determine that he was competent at that moment without a hearing, and without having observed him. However, at this instant, the court had knowledge of the following:

- Potter tried to choke his mother.
- Potter's mother called her son "crazy."
- The circuit court's concern that Potter was not competent to stand The circuit court's concern that Potter was not competent to stand trial.
- Potter's entry of "not guilty by reason of mental illness of deficiency plea."
- Potter's claim he was not competent to proceed.
- A diagnosis that Potter was a paranoid schizophrenic.
- Potter's admission that he was uncertain as to what evidence of his mental condition would be introduced at trial.
- A doctor's testimony that there was a greater possibility of psychotic episodes when Potter did not take his medication, and an inability to confirm he was actually taking those medications.
- The victim's testimony that Potter was "going into that schizophrenic stage again."

Given this information, the district court's decision to grant the State's motion and suspend proceedings pending the receipt of the evaluation was appropriate. After the district court received the evaluation on June 1, 2005, it made its final determination relating to Potter's mental health issues on June 7, 2005. Consequently, from March 28, 2005, to June 7, 2005, the speedy trial clock was tolled, and the delay was excludable under Rule 48.

[¶ 31] On the whole, calculating the days from October 21, 2004, the date Potter first raised the issue of his mental illness, to June 7, 2005, the date the district court finally resolved the issue once and for all, 230 days elapsed. Of the total 337 days of delay, those 230 are excludable under Rule 48, thus resulting in a remainder of 107 days. That 107 being well under the 180–day limit of Rule 48, Potter's speedy trial rights were accordingly not violated under the rule.

### B. Constitutional Claim

[¶ 32] In the second part of Potter's speedy trial argument, he believes that his constitutional right to a speedy trial was violated because 362 days passed between his original arrest and his conditional guilty plea. Every criminal defendant is entitled to a speedy public trial under the Sixth Amendment to the United States Constitution and art. 1, § 10 of the Wyoming Constitution. *Sisneros v. State,* 2005 WY 139, ¶ 16, 121 P.3d 790, 796 (Wyo.2005). In reviewing a district court's decision on whether or not a defendant's constitutional right has been violated, we apply the *de novo* standard of review. *Id.; see also Berry v. State,* 2004 WY 81, ¶ 17, 93 P.3d 222, 227–28 (Wyo.2004). The district court's findings of fact on the speedy trial issue are reviewed for clear error. *Sisneros,* ¶ 16, 121 P.3d at 797.

[¶ 33] *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, (1972) announced the benchmark test that applies to constitutional speedy trial claims. "Under that test, we consider four factors in determining whether a speedy trial violation has occurred: 1) The length of the delay; 2) the reason for the delay; 3) the defendant's assertion of his right; and 4) the prejudice to the defendant." *Id.,* at 530–32, 92 S.Ct. 2182. We consider the factors together and balance them in relation to all of the relevant circumstances of the delay in bringing a defendant to trial. *Walters v. State,* 2004 WY 37, ¶ 10, 87 P.3d 793, 795 (Wyo.2004); *Barker,* 407 U.S. at 533, 92 S.Ct. 2182. The ultimate question is "whether the delay in bringing the accused to trial was unreasonable, that is, whether it substantially impaired the right of the accused to a fair trial." *Walters,* ¶ 10, 87 P.3d. at 795 (quoting *Warner v. State,* 2001 WY 67, P10, 28 P.3d 21, 26 (Wyo.2001)).

When a defendant's constitutional right to a speedy trial is violated, the charges must be dismissed with prejudice. *Walters,* ¶ 10, 87 P.3d at 795.

[¶ 34] We begin with the first factor of the *Barker* test—the length of the delay.[6] There is no specific length of delay which automatically constitutes a violation of the constitutional right to a speedy trial. We have, however, held that a delay of 500 days was presumptively prejudicial, while delays of 372, 355, and 319 days, respectively, warranted further analysis. *Sisneros,* ¶ 18, 121 P.3d at 797; *e.g., Berry,* ¶ 32, 93 P.3d at 231; *Whitney v. State,* 2004 WY 118, ¶ 40, 99 P.3d 457, 471 (Wyo.2004).

[¶ 35] Here, Potter was arrested on September 26, 2004, and entered his conditional plea on September 23, 2005, resulting in a total delay in resolution of his case of 362 days. As we acknowledged in both *Berry* and *Sisneros,* once a defendant's speedy trial right has attached, it continues until the case is finally resolved. *Sisneros,* ¶ 19, 121 P.3d at 797; *Berry,* ¶ 32, 93 P.3d at 231 (quoting 4 Wayne R. LaFave, Jerold H. Israel, and Nancy J. King, *Criminal Procedure,* § 18.1(c) at 670–71 (2d ed.1999)). Similar to *Sisneros,* and consistent with other prior cases, we conclude that a delay of 362 days between Potter's arrest and the final resolution of his case warrants examination of the other three factors.

[¶ 36] That brings us to the second factor—the reason for the delay. In conducting this analysis, we determine which party was responsible for the delay. *Sisneros,* ¶ 20, 121 P.3d at 797. We quoted *Barker* in *Sisneros:*

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a

missing witness, should serve to justify appropriate delay.

*Sisneros,* ¶ 20, 121 P.3d at 797 (citations omitted). We further stated in *Sisneros:*

> Official bad faith in causing delay is weighed heavily against the government. *Barker v. Wingo,* 407 U.S. 514 at 531, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). "Delays attributable to the defendant are deducted from the equation." *Jennings v. State,* 4 P.3d 915, 921 (Wyo.2000). "We weigh any delay properly attributable to the defendant against the delay chargeable to the State. We have frequently acknowledged a defendant may defeat his claim to a speedy trial by his own dilatory practices." *Wehr,* 841 P.2d at 113.

*Sisneros,* ¶ 20, 121 P.3d at 797.

[¶ 37] Potter argues that the State and the district court are largely responsible for the delay in this case—such as the trial being continued due to a stacked docket, the various assignments to different judges, and the State asking for reconsideration of Potter's competency. However, as discussed at length above, the largest part of the delay can be attributed to Potter when he pleaded "not guilty by reason of mental illness or deficiency and not competent to stand trial," and specifically requested a mental evaluation. The resulting impediments in the progression of Potter's case were exacerbated by Potter himself, in several instances. For example, he requested a mental evaluation, but then told the examiner not to complete and finalize the report. The record also reflects that he was uncertain as to what, if any, evidence of his mental illness he wished to introduce in his defense, further complicating matters. We conclude, therefore, that the delay was largely due to Potter, and that any reason for delay caused by the State and Court can be considered neutral.

[¶ 38] In discussing the third factor, whether or not a defendant affirmatively asserted his right to a speedy trial, we have said the following:

> [I]t is not necessary for a defendant to assert his right to a speedy trial in order

6. For constitutional speedy trial claims, the proverbial clock begins ticking upon arrest. *Taylor v. State,* 2001 WY 13, ¶ 6, 17 P.3d 715, 718 (Wyo.2001).

to identify a speedy trial violation. However, we can, and do, consider whether the right was asserted, and how vigorously, in determining the reasonableness of any delay. The action or inaction of the defendant in this regard is a reflection of the actual amount of prejudice being experienced.

*Whitney,* ¶ 52, 99 P.3d at 474 (citations omitted).

[¶ 39] Indeed, Potter filed two formal demands for a speedy trial on November 10, 2004, and again on November 23, 2004. Later, a few days before he conditionally pleaded guilty, he filed a *Motion to Dismiss Charges With Prejudice for Violation of Defendant's Right to Speedy Trial.* However, this motion, which was filed only five days before trial and almost two months after the district court granted a continuance, in combination with the fact that Potter did not object when the district court continued the trial from July 11, 2005, to September 26, 2005, amounts to a less than vigorous assertion of his rights. Furthermore, the record reflects no evidence of any intentional delay on the part of the State in order to gain a tactical advantage. Potter's trial was delayed primarily by his own actions.

[¶ 40] Finally, the last *Barker* factor to consider is the degree of prejudice suffered by a defendant. A demonstration of prejudice is not necessary to establishing a constitutional violation. However, in conducting a speedy trial analysis, the prejudice suffered by the defendant should be considered. *Sisneros,* ¶ 28, 121 P.3d at 797. *Barker* sets out three interests that the right to speedy trial was intended to protect and by which the level of prejudice is to be measured: (1) "to prevent oppressive pretrial incarceration;" (2) "to minimize anxiety and concern of the accused;" and (3) "to limit the possibility that the defense will be impaired," *Barker,* 407 U.S. at 532, 92 S.Ct. 2182.

[¶ 41] Of these factors, the possibility that a defendant's defense will be impaired is the "most serious" factor "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Whitney,* ¶ 54, 99 P.3d at 475. Pretrial anxiety "is the least significant" factor and because a "certain amount of pretrial anxiety naturally exists," an appellant must demonstrate that he suffered "extraordinary or unusual" pretrial anxiety. *Id.* The length of the delay, alone, does not raise a presumption of prejudice. Furthermore, as we have stated repeatedly, that Potter's actions led to a significant amount of the delay weighs against a finding of presumed prejudice. *Id.,* ¶ 55, 99 P.3d at 475; *Sisneros,* ¶ 29, 121 P.3d at 800. Thus, a defendant has the burden of showing actual prejudice. *Id.*

[¶ 42] Here, Potter claims that he was prejudiced by the length of his pretrial incarceration, from September 26, 2004, to September 23, 2005.[7] Undeniably, his liberty was severely restricted, and his extended incarceration necessarily affected his "employment opportunities, financial resources and association" with family and friends. *Berry,* ¶ 48, 93 P.3d at 237. Therefore, Potter may have suffered some incidental prejudice as a result of the delay. However, when all of the factors are considered together, we conclude that he was not denied his constitutional right to a speedy trial.

[¶ 43] While a delay of almost one year necessitates careful analysis, the length of the delay was not so excessive that it resulted in a presumption of prejudice. The critical aspect of this case is the parties' relative contributions to the delay. Although Potter was prejudiced to a very limited extent as a result of the delay, his much weightier contribution to the delay counsels against finding that he was denied his constitutional right to a speedy trial.

[¶ 44] The Judgment and Sentence of the district court, as well as its order revoking probation, are affirmed in all respects.

---

7. Potter was taken into custody on September 26, 2004, and released on his own recognizance on September 23, 2005.